WEEKS v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 13, 1915.)

No. 243.

1. FOOD ☞15—"MISBRANDED"—STATUTORY PROVISIONS.

Under Food and Drugs Act June 30, 1906, c. 3915, § 8, 34 Stat. 771 (Comp. St. 1913, § 8724), subhead "In the Case of Food," declaring that an article shall be deemed "misbranded" where it is labeled to mislead the purchaser, or purports to be a foreign product when not so, and where the package containing it or its label shall bear a false or misleading statement, provided that an article of food which does not contain any added poisonous or deleterious ingredients, shall not be deemed to be adulterated or misbranded in the case of compounds known as articles of food under their own distinctive names, and not in imitation of or offered for sale under the distinctive name of another article, and in case of articles labeled so as to plainly indicate they are compounds, and the word "compound" is stated on the package in which it is offered for sale, an article labeled "Fruit Wild Cherry Compound," but not composed of any "Fruit Wild Cherry," nor any added poisonous or deleterious ingredients, is not misbranded.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ☞15.

For other definitions, see Words and Phrases, First and Second Series, Misbrand.]

2. FOOD ☞5—"ADULTERATED"—ACTS CONSTITUTING.

The provision in Food and Drugs Act, § 8, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated in enumerated cases, qualifies section 7, declaring that an article shall be deemed adulterated if it be mixed, colored, powdered, coated, or stained in a manner whereby damage or inferiority is concealed, and an article labeled "Fruit Wild Cherry Compound," and containing no "Fruit Wild Cherry," but containing a coal tar color giving to the mixture the genuine color of wild cherry juice, but not any added poisonous or deleterious ingredients, is not adulterated.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. ☞5.

For other definitions, see Words and Phrases, First and Second Series, Adulterate.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. FOOD ☞15—"MISBRANDED"—ACTS CONSTITUTING.

An article labeled: "Special Lemon. Lemon Terpene and Citral"—but not derived from lemon, but a mixture containing alcohol and citral, derived from lemon grass and an imitation of lemon oil, is not "misbranded."

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ☞15.]

4. CRIMINAL LAW ☞1159—VERDICT—CONCLUSIVENESS.

A conviction on conflicting evidence will not be disturbed on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. ☞1159.]

5. FOOD ☞15—"MISBRANDED."

An article composed of alcohol and citral, derived from lemon grass and an imitation of lemon oil, and labeled "Special Lemon," and represented by the seller's agent to the buyer as pure lemon oil, was misbranded, within Food and Drugs Act, § 8, defining misbranding as offering an article for sale under the distinctive name of another article, though no label describing it as such other article is affixed to it.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ☞15.]

6. FOOD ☞15—MISBRANDING—OFFENSES—ACTS OF SALES AGENT.

A seller of an article of food so represented by his agent to the buyer as to be misbranded, within Food and Drugs Act, § 8, is liable for misbranding, since intent is not an element of the offense.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ☞15.

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment convicting plaintiff in error, who was defendant below of violation of the Food and Drugs Act of June 30, 1906.

There were three informations, and two counts under each. The first information dealt with an article of food called "Fruit Wild Cherry Compound." The first count of this information was quashed before trial. The second count charged shipment of such an article, which was misbranded because it was labeled "Fruit Wild Cherry Compound," whereas it consisted chiefly of imitation wild cherry essence, artificially colored.

The second information, in its first count, charged the shipping of the article which "was adulterated in that it was artificially colored with a coal tar dye in such manner as to simulate a fruit wild cherry and in a manner whereby its inferiority was concealed." The second count charged the selling and offering for sale of the article under the distinctive name of another article. The article and the label in all these counts were the same.

The third information in its fruit count charged the shipment of an article of food labeled: "Special Lemon. Lemon Terpene and Citral." This label was charged to be false and misleading, because the statement in it would indicate that the article was a product derived from lemon, whereas it was in fact not a product derived from lemon, but was a mixture containing alcohol and citral derived from lemon grass, and was an imitation of lemon oil. The second count charged the offering of such article for sale under the distinctive name of another article, to wit, a product derived from lemon.

Defendant was convicted under all five counts.

Walter J. Carlin, of New York City, for plaintiff in error.

H. Snowden Marshall, U. S. Atty., and Robert P. Stephenson, Asst. U. S. Atty., both of New York City.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The case calls for the construction of sections 7 and 8 of the Pure Food and Drugs Act. Prior sections forbid in general terms the manufacture and shipment in interstate commerce of any article of food or drugs which is adulterated or misbranded. Those two sections (7 and 8) undertake to define the words "adulterated" and "misbranded" as used in the statute. Had they been phrased in general terms, it might not be difficult to construe and apply them to the concrete facts of each case as they are developed on a trial. But the draftsman apparently thought that the more words he used the more plainly would he express the meaning intended. Not unnaturally an opposite result has been accomplished. The sections are most difficult of construction; possibly the phrasing of some of their provisions may operate to defeat the object probably intended. But we cannot rewrite the sections; if amendment be needed to make the act effective, that will be a matter for the consideration of Congress.

[1] Considering now the charges, as to the "Fruit Wild Cherry Compound," the labeling of which it is contended violates the provisions of section 8, subhead "In the Case of Food." The label indicates, we should suppose, to any intelligent mind that the article is a compound into which "Fruit Wild Cherry" has entered, at least in sufficient quantity fairly to warrant the use of these quoted words. The testimony of defendant's own witness shows that the article contains absolutely no "Fruit Wild Cherry." It is therefore clearly within section 8, "Food" subdivision, paragraph second, because it is "so labeled as to mislead the purchaser" and also within paragraph fourth, because its label bears "a statement regarding the ingredients or the substance contained therein, which statement [is] false or misleading in [the particular] that the compound contains Fruit Wild Cherry." If this were all, one might leave the subject with a conviction that the statute, in its application to this case, had accomplished its apparent object. But the act contains an important proviso, apparently tacked onto the bill to protect various combinations on the market at the time. In order to appreciate the full force of this proviso, which concludes section 8, it is here quoted:

"Provided, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases:

"First. In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under their own distinctive names, and not an imitation of or offered for sale under the distinctive name of another article, if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced.

"Second. In the case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends, and the word 'compound,' 'imitation,' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale: Provided, that the term blend as used herein shall be construed to mean a mixture of like substances, not excluding harmless coloring or flavoring ingredients used for the purpose of coloring and flavoring only: And provided further, that nothing in this act

shall be construed as requiring or compelling proprietors or manufacturers of proprietary foods which contain no unwholesome added ingredient to disclose their trade formulas, except in so far as the provisions of this act may require to secure freedom from adulteration or misbranding."

Now there is not a scintilla of evidence in the case to show that defendant's article contains "any added poisonous or deleterious ingredients"; therefore it is covered by the proviso (second clause), because it is "labeled to plainly indicate that it is a compound," and the word "compound" is plainly stated on the package. In consequence it cannot, under the proviso, "be deemed to be misbranded."

[2] In the second information the charge is brought under section 7 of the act, which enumerates the conditions which will constitute adulteration of an article for the purposes of the act. The charge is that "Fruit Wild Cherry Compound" was adulterated, in that it was "artificially colored with a coal tar dye in such a manner as to simulate a true fruit wild cherry and in a manner whereby its inferiority was concealed." Section 7 contains this clause:

"Fourth. If it be mixed, colored, powdered, coated or stained in a manner whereby damage or inferiority is concealed."

The shipment is the same as that covered by the first information. The label is the same "Fruit Wild Cherry Compound." Manifestly the label does not state that the article is "Fruit Wild Cherry," but only that it is a *compound,* which contains fruit wild cherry. Defendant's witness, who was familiar with the manufacture of the compound, testified that they soak wild cherry bark in water, filter the infusion, dilute it with alcohol, add benzaldehyde or oil of bitter almonds, fruit juice of raspberries, and some extract of orris and oil of rose. No fruit wild cherry enters into the compound. There was testimony from which the jury might find that the compound also contained a coal tar color known as amaranth, that genuine fruit wild cherry has a red color, that the compound described by defendant containing fluid extract of wild cherry bark would not have this color, and that the amaranth gave to the mixture the genuine color of wild cherry juice. The testimony seems to indicate that the bark infusion of wild cherry is inferior to the fruit juice, and we should be inclined to sustain the verdict, were it not for the proviso as to "compounds" above quoted.

That proviso is found at the close of section 8, which section undertakes exhaustively to define "misbranding." Under ordinary rules of construction the operation of the proviso might be restricted to the section in which it appears, and it might be held not to qualify section 7, which defines "adulterations." But the draftsman of the act has been careful not thus to restrict it, because the proviso begins:

"That an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be *adulterated or misbranded* in the following cases."

Then follows the enumeration above set forth. The article in question is an article of food, and the information does not charge, nor does the testimony show, that there have been added to the compound "poisonous or deleterious ingredients." The proviso, therefore, requires a reversal of the conviction under this count.

[3] The second information deals with a different article, labeled: "Special Lemon. Lemon Terpene and Citral." The first count charged that the article was misbranded; that the label was misleading, in that the statement would indicate that the article was a product derived from lemon, whereas the product was not a product derived from lemon, but was a mixture containing alcohol and citral derived from lemon grass and an imitation of lemon oil. The article seems not to be covered by the proviso, because the *word* "compound" is not "plainly stated on the package in which it is offered for sale."

The question is: Was the label false and misleading? It obviously indicated that the so-called "Special Lemon" was a compound of which Lemon Terpene and Citral were components. The words "Special Lemon" do not, of course, import that the article was "lemon," a word which in ordinary speech denotes the fruit of a well-known citrous tree. There is no testimony that this word, standing by itself, has any distinctive trade meaning; there are lemon oils, lemon extracts, lemon juice, lemon essence, etc. The use of the words "Special Lemon" does not import any representation that the article is a variety of lemon oil. The testimony shows that lemon terpenes are the oily part—the hydrocarbon oils of the lemon, of the lemon peels; they are a by-product from the manufacture of lemon flavor. Citral is derived from lemon grass, a grass that grows in the East Indies. Where we have a label which indicates that the contents of the package consists of a compound of lemon terpene and citral, which compound the manufacturer designates as "Special Lemon," and the contents agree with the designation, we do not see how it can be held that there has been a misbranding within the meaning of the act.

[4, 5] The second count charges that the same article was offered for sale as a product derived from lemon. A witness called by the government, who was engaged in the manufacture of crackers at Atlanta, Ga., testified that he was visited there by a salesman of defendant; that the salesman showed him a sample in a bottle and told him it was pure lemon oil, which he was able to sell at a low price because it was "second pressing." The witness ordered some of it, which was sent to him by defendant. The salesman, called by defendant, denied the making of any statements as to the article being lemon oil. Upon this conflict of evidence the finding of the jury that the representations were made is controlling here, and it must be held that there was a misbranding under the statute, because section 8 defines misbranding as, inter alia, "offering an article for sale" under the distinctive name of another article, even though no label describing it as such other article be actually affixed to it.

[6] Since intent is not an element of the offense, defendant must be held liable for the act of his sales agent, although he had told him not to misdescribe the article.

The judgment under this count is affirmed.