THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LEANDRO MIRANDA, Defendant and Appellant.

No. 15945. Argued March 1, 1956.—Decided November 5, 1956.

668

J. *Calzada González* and *Santos P. Amadeo* for appellant. *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán, Fiscal of the Supreme Court,* for appellee.

Mr. Justice Saldaña delivered the opinion of the Court.

Appellant was charged with violating the Insular Supplies Act (23 L.P.R.A. § 731 *et seq.*) in connection with Administrative Order No. 228 of 1953.[1] The information consists of three counts, to wit: that on May 21, June 3, and June 10, 1953, Leandro Miranda, then a rice wholesaler, illegally, wilfully, and maliciously violated the provisions of the said administrative order, selling to Daniel Flores Castro some sacks of rice and charging each time an overprice which he caused to appear in the invoices as corresponding to sales of boxes of candy, oil, and chewing gum, when the fact was that the defendant never sold such articles to the purchaser.

---

[1] Section 13(*b*) of Act No. 228 of May 12, 1942 (Sess. Laws, p. 1268), as amended by Act No. 31 of September 15, 1950 (Spec. Sess. Laws, p. 248), provides that:

"Any person who violates any provisions of this Act or of any price schedule, rule, regulation, or directive issued by the General Supplies Administrator under the provisions hereof, and any person who files or makes a statement or report that is false in any material respect, in any document or report required of such person by the Administrator, shall be guilty of *a misdemeanor, and shall, upon conviction thereof, be punished by imprisonment in jail for a term of not less than thirty (30) days nor more than two (2) years, and in addition by a fine of not less than one hundred (100) dollars nor more than ten thousand (10,000) dollars.* In default of the fine he shall be sentenced to imprisonment in jail for one day for each dollar he fails to pay; *Provided, however,* That any person who violates any rule, regulation or directive issued by the General Supplies Administrator in connection with the practices of hoarding any staple commodity, shall be guilty of a felony, and shall, upon conviction thereof, be punished by imprisonment in the penitentiary for a term of not less than six (6) months nor more than two (2) years, and in addition, by a fine of not less than one thousand (1,000) dollars nor more than ten thousand (10,000) dollars.

"The section of the District Tribunal of Puerto Rico of the place where was carried out the act or transaction constituting the offense or involving the violation of any rule, regulation or directive, whether it be a misdemeanor or a felony, shall have original jurisdiction over said offense, *and the trial shall be held by the court; Provided,* That persons convicted of the aforesaid violations may not avail themselves of the benefits of the Suspended Sentences Act or of any other law permitting the suspension of sentences in criminal cases in Puerto Rico. . . ." (Italics ours.)

The trial having been held, the lower court found the defendant guilty and sentenced him to serve two months in jail and to pay a fine of $250 for each of the three violations, the jail sentences to be served concurrently. On appeal, it is alleged that the trial court committed the following errors:

"First Error: . . . the defendant was deprived of his constitutional right to a trial by jury guaranteed by . . . the Constitution of the Commonwealth of Puerto Rico. . . .

"Second Error: The judgments against defendant-appellant are null and void because they violate Art. II, § 12, second par., of the Constitution of the Commonwealth of Puerto Rico, which provides that no *ex post facto* law shall be passed.

"Third Error: . . . the state's evidence did not show that the defendant personally violated the law, and that if any violation was committed, it must have been by his employees without appellant's consent, instigation, or authorization.

"Fourth Error: Section 13(*b*) of Act No. 31 of September 15, 1950, which deprives the defendant of the right to a trial by jury, is null and void because it is repugnant to the Fifth and Fourteenth Amendments to the Constitution of the United States, and to § 7 of Art. II of the Constitution of the Commonwealth of Puerto Rico."

■ In support of the first assignment, appellant maintains that, in view of the nature of the offense and of the penalties provided by law, the constitutional provision which guarantees to every accused a trial by jury "in all prosecutions for a felony," is applicable. We do not agree. Paragraph 2 of § 11 of Art. II of the Constitution of the Commonwealth of Puerto Rico provides that: "In all prosecutions for a felony the accused shall have the right of trial by an impartial jury composed of twelve residents of the district, who may render their verdict by a majority vote which in no case may be less than nine." L.P.R.A., Vol. I, p. 181. As clearly indicated by the report of the Bill of Rights Committee and the debates of the Constitutional Convention, the term "felony" employed in that constitutional provision does not include any offense classified as a misdemeanor under

the legislation enacted before the Constitution went into effect, which did not necessarily grant the right to trial by jury. The nature of the offense and the penalties provided by law are of slight importance in this respect.[2] Here the violations for which appellant was prosecuted were characterized as misdemeanors under Act No. 31 of September 15, 1950. And the law specifically provides that the trial shall be held by the court.

 In the second error assigned, appellant maintains that Act No. 97 of June 19, 1953 (Sess. Laws, p. 350) is the only applicable law in fixing the penalties in this case, but that it is unconstitutional because it altered the norm of the punishment prescribed by law for the offenses involved in this case, at the time of commission, to the prejudice of the defendant. This contention, in our opinion, lacks merit. According to the three counts contained in the information, appellant committed the misdemeanors recited above on three

---

[2] In explaining the limited scope of the constitutional guaranty of a trial by jury in felony cases, the Committee pointed out the following: "We have not used the term 'grave' as equivalent to "felony,' as defined in our penal law. *We have used it as including all 'felony' offenses and those others in which, without being so, present legislation grants a fortiori the right to trial by jury.* An example of this is the offense of involuntary manslaughter which, although a 'misdemeanor,' can only be tried in the District Court, the defendants charged with this offense having the right to a trial by jury. However, those misdemeanors with respect to which the existing legislation grants the right to trial by jury whenever they are originally prosecuted in the District Court but not when they are originally prosecuted in the Municipal Court, are not included, *nor such misdemeanors as to which the existing legislation does not grant the right to a trial by jury, although they are prosecuted originally in the District Court.*

"The word '*grave*,' as used in the text, shall always include the offenses now classified as 'felonies,' even though this classification may disappear in the future. It shall also include always those misdemeanors in which the right to trial by jury is now necessarily granted." (Italics ours.) See 21 *Revista Jurídica de la Universidad de Puerto Rico* 1, 19 (1951).

On the other hand, the same view on the meaning of the term "felony" and the scope of the constitutional right to a trial by jury was adopted in the debates of the Constitutional Convention. *Journal of Sessions, Constitutional Convention of Puerto Rico*, p. 606.

different dates: May 21, June 3, and June 10, 1953. There is no question that § 13 (*b*) of Act No. 228 of May 12, 1942, as amended by Act No. 31 of September 15, 1950, provided at that time for each violation charged against appellant a penalty of imprisonment in jail for not less than thirty (30) days nor more than two (2) years, and in addition a fine of not less than one hundred (100) dollars nor more than ten thousand (10,000) dollars. Section 13 (*b*) of Act No. 228 of 1942 originally provided for a jail sentence of not less than three (3) months nor more than two (2) years, and a fine not to exceed five thousand (5,000) dollars. Obviously, the lower court applied in this case the amendatory Act of 1950, since it sentenced appellant to serve two (2) months in jail and imposed a fine of two hundred fifty (250) dollars for each offense.

Appellant maintains, however, that by the subsequent enactment of Act No. 97 of June 19, 1953, the Legislative Assembly restored the penalties originally established by § 13 (*b*) of Act No. 228 of 1942, and impliedly repealed the amendatory Act of 1950. This contention rests exclusively on the fact that, in providing that "violations of the orders, rules and regulations issued by the Economic Stabilization Administrator shall be punished in the manner provided by Act No. 228 of May 12, 1942," the ritual phrase "as amended" was not included at the end of § 2 of Act No. 97, *supra*, of 1953. Appellant's interpretation of the law seems to us absurd and unacceptable. In the first place, for obvious reasons of logic and justice, implied repeals shall not be encouraged by the courts. *People* v. *Shell Co.* (P.R.) *Ltd.*, 56 P.R.R. 55 (1940); 1 Sutherland, *Statutory Construction* (3d ed.), § 2012. Moreover, the sole purpose of Act No. 97 of June 19, 1953, was to create the Economic Stabilization Administration and to transfer thereto the functions, powers, and duties of the former General Supplies Administration and also of the Rent Administration. Everything points to

the fact that the legislative intent was to maintain unchanged the substantive provisions of Act No. 228 of 1942, as it stood at that time. Hence, the omission of the words "as amended" at the end of § 2 can not constitute an implied repeal of the Act of 1950, amendatory of § 13 (b) *supra*. In reality, the reference made to "Act No. 228 of May 12, 1942" in the context of the Act of 1953 is sufficient to include all the amendments introduced from 1942 until 1953 to the penal provisions of the Insular Supplies Act. 1 Sutherland, *Statutory Construction* (3d ed.), § § 1910, 1935, 2006 *et seq.*, 2031. In other words, Act No. 31 of September 15, 1950, amending § 13 (b) of the Insular Supplies Act, was in force both at the time the offenses charged in this case were committed and at the time the judgments appealed from were rendered. Consequently, in the case at bar no question is actually raised as to whether or not an act or its application is *ex post facto* under the second paragraph of § 12, Art. II of the Constitution of the Commonwealth of Puerto Rico. *Cf. Lindsey* v. *Washington*, 301 U. S. 397 (1937), and *Fernández* v. *Rivera, Warden*, 70 P.R.R. 859 (1950).[3]

 Again we do not agree with appellant as respects the third assignment of error. He complains that the evidence for the prosecution is insufficient, because it failed to show that he himself violated the law, or that he consented, instigated, or authorized the sales transacted by two of his employees in his establishment. Generally, a "criminal intent" (*mens rea*) is an essential element of an offense.

---

[3] It is well to point out that, apart from the interpretation adopted in his opinion, the lower court acted correctly in applying to this case the provisions of the amendatory Act of 1950, since according to § 44 of the Political Code (2 L.P.R.A. § 252), "The repeal of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so repealed unless the intention to bar such information and punishment is expressly declared in the repealing Act." *Cf. People* v. *District Court*, 70 P.R.R. 644, 646–47 (1949). See, also, § 386 of the Political Code (2 L.P.R.A. § 253); *People* v. *Arecco*, 67 P.R.R. 299 (1947); and *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870 (1945).

Therefore, a mere showing that forbidden acts were committed through mistake, accident or ignorance is not sufficient to impose criminal liability. This mental element of the offense is expressed in terms such as "intentionally," "willfully," "maliciously," "with evil intent," etc. Even if the law creating the offense does not expressly provide that the criminal intent is essential, the penal statute must always be construed as requiring such mental state as an element of the offense, unless the law or the legislative history clearly indicates otherwise. See *Morissette* v. *U. S.*, 342 U. S. 246 (1952); *People* v. *Vogel*, 299 P. 2d 850 (1956); Hall, *General Principles of Criminal Law* 279–376. In our case, however, § 13(*b*) of the applicable law was amended by Act No. 31 of September 15, 1950, so as to expressly eliminate any "criminal intent" (*mens rea*) as an element of criminal liability.

Section 13(*b*) of Act No. 228 of 1942, provided originally:

"Any person who *willfully* violates any provision of this Act, and any person who files or makes a statement or report that is false in any fundamental respect, in any document or report required of him by the Administrator, shall, upon conviction thereof, be punished by a fine which shall not exceed five thousand (5,000) dollars, and by imprisonment in jail for a term of not less than three (3) months or more than two (2) years; and in those cases where the offense consists of the violation of a price-schedule, an additional fine shall be levied which shall be equivalent to three times the sum involved in the prohibited transaction. Whenever the Administrator believes that some person is subject to punishment under the provisions of this paragraph, he shall certify the facts to the Attorney General who, in his discretion, shall institute the proper proceedings. The District Court of the place wherein the act or transaction constituting the offense was executed, shall have original jurisdiction over said offense, and the case shall be tried by court of law. No costs shall be assessed against the Government of Puerto Rico in any proceedings brought in accordance with this Act." (Italics ours.)

In construing the term "willfully" found in the statute, we held in *People* v. *López,* 67 P.R.R. 585, 591–93 (1947) :

"The statute involved herein, Act No. 228, Laws of Puerto Rico, 1942 (p. 1268), as amended by Act No. 493, Laws of Puerto Rico, 1946 (p. 1474), was copied substantially from the Federal Emergency Price Control Act of 1942. *Ex parte Irizarry,* 66 P.R.R. 634. Both § 13 of our Act and § 205 of the Federal Act, 50 U.S.C.A. App. § 925, provide for other sanctions, such as cancellations of licenses, injunctions and civil suits for triple damages where violations thereof are not willful, see *Hetcht Co.* v. *Bowles,* 321 U.S. 321; only in the event of a willful violation may the penal sanctions of the Federal and insular Acts be invoked. *Yakus* v. *United States,* 321 U. S. 414, 435; *United States* v. *Renken,* 55 F. Supp. 1, 3 (Dist. Ct., S. C., 1944) ; *Compañía Importadora, etc.* v. *Caldwell & Co.,* 58 N.Y.S. 2d 745, 750 (1945) ; *Husers* v. *Papania,* 22 S. (2d) 755, 757 (La. 1945).

"It therefore becomes important to determine the content of the adjective 'willful.' This is a word 'of many meanings, its construction often being influenced by its context.' *Screws* v. *United States,* 325 U.S. 91, 101. However, the problem is not unduly difficult here, as the Federal statute from which our Act was copied has been judicially interpreted. The use of 'willful' in the penal provision of our statute does not make it necessary to prove a specific criminal intent to commit the offense; that is to say, 'willfully' does not mean 'malevolently' or 'with evil intent.' On the other hand, neither is the other extreme true: the offense is not spelled out, as in the case of adulteration of milk, merely by showing that the facts occurred; namely, the milk was adulterated, or as here the lard weighed less than the invoice showed. See *People* v. *Vázquez,* 26 P.R.R. 13; *People* v. *Díaz,* 62 P.R.R. 129. Rather in its use of 'willful' this statute occupies the middle ground: although no specific evil intent or malevolence is required, the offense, to be willful, must be intentional, knowing, deliberate or obstinate, as distinguished from accidental, mistaken or unknowing. . . .

". . . . . . . .

"When we apply this concept of willful violation to the facts of the instant case, we find it clear that the mere fact that López did not personally participate in these transactions would

not in itself under Act No. 228 exculpate him from criminal liability under other circumstances. On the other hand, unlike the adulteration of milk cases, he is not absolutely liable, whether or not he participated. Rather the test when he does not participate personally is whether there is some evidence, either direct or circumstantial, tending to show that his employees intentionally or deliberately violated the law pursuant to his direction, or with his approval or acquiescence. Here there was not such testimony or circumstances. On the contrary all the evidence of the government and the circumstances demonstrate his desire to get rid of his lard without getting into any difficulty with the crowd which was clamoring for it. In effect, López was convicted for being owner of an establishment at which lard was sold underweight. But Act No. 228, as we have seen, does not make that a crime, in the absence of a willful violation on his part."

Thereafter the Legislative Assembly of Puerto Rico eliminated the term "willfully" from § 13(b) when it enacted Act No. 31 of September 15, 1950. In so doing, it purposely chose an absolute norm of criminal liability and, therefore, as respects the penal sanctions, the element of wilfullness is no longer required to punish a person criminally under the provisions of § 13(b) of the Insular Supplies Act. In the case at bar, the sales in violation of the Act and of Administrative Order No. 228 of 1953, were transacted in appellant's establishment by his employees (duly authorized to transact sales and deliveries of rice) in the course of employment. The invoices in which the overprice was concealed were paid by checks to the order of appellant. Although the latter did not manage his business personally, he testified nonetheless that "I used to come every afternoon . . . to check the operations." Under these circumstances, even in the absence of evidence tending to show that his employees violated the law upon instructions of appellant or with his consent and acquiescence, the latter is criminally responsible for the criminal acts of his employees according to the provisions of § 13(b) of the Insular Supplies Act in

force at present. See *People* v. *Ortiz*, 78 P.R.R. 803 (1955) ; *People* v. *Vidal*, 78 P.R.R. 71 (1955) ; *U. S.* v. *Parfait Powder Puff Co.*, 163 F. 2d 1008 (7th Cir., 1947), *cert. den.*, 332 U. S. 851 (1948) ; *U. S.* v. *George Fish, Inc.*, 154 F. 2d 798 (2d Cir., 1946), *cert. den.*, 328 U. S. 869 (1946) ; *Ex parte Marley*, 175 P. 2d 832 (Cal. 1946) ; *State* v. *Grams*, 6 N. W. 2d 191 (Wisc. 1942) ; *State* v. *Erlandson*, 249 P. 2d 794 (Mont. 1952) ; Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689 (1930) ; Note 139 A.L.R. 306; *Criminal Liability of Corporations for Acts of their Agents*, 60 Harv. L. Rev. 283 (1946).[4]

█ In view of the conclusions reached by us in the discussion of the first error and of the holding in *People* v. *Figueroa*, 77 P.R.R. 175 (1954), *aff'd*, *Figueroa* v. *People of Puerto Rico*, 232 F. 2d 615 (1st Cir., 1956), it is obvious that the fourth assignment of error is without merit. Section 13 (*b*) of Act No. 31 of September 15, 1950, which denies to appellant in this case the right to a trial by jury, does not violate any of the Amendments to the Constitution of the United States or § 7 of Art. II of the Constitution of the Commonwealth of Puerto Rico.

█ Lastly, it should be pointed out that there is no evidence in the record that appellant purchased the rice, which he thereafter sold at an overprice, from one of the

---

[4] It is true that appellant testified that he never instructed his employees to invoice other articles which might conceal an overprice in the sale of rice, and that his employees testified that they had instructions to sell the rice at the price fixed by law. Yet, it is obvious that the trial court did not believe such testimony. Nor are we bound to consider here hypothetical questions which are not in issue in the case at bar, such as an employees' conspiracy to injure their employer by transacting sales at an overprice in violation of the law. It is well to point out also that "criminal intent" (*mens rea*) is a mental state often inferred from the acts and attendant circumstances. This is why, even under the formula of wilfullness existing before the enactment of Act No. 31 of September 15, 1950, the mere fact that an employer did not personally execute a sale in violation of the law did not relieve him from criminal liability. *People* v. *López, supra*, at 593; Hall, *General Principles of Criminal Law*, 305 *et seq.*

importers who had imported this article at the prices prevailing after February 25 through June or July 1953. Nor was it shown that appellant is one of the rice importers favored by the invalidity of Administrative Order No. 228 of 1953, decreed in *Mora* v. *Mejías*, 223 F. 2d 814 (1st Cir., 1955). Therefore, the situation is identical with that considered in *People* v. *Ortiz*, 78 P.R.R. 803 (1955), and it is well to repeat what we said there: ". . . the decision in the *Mora* case is not favorable to him [to appellant] even assuming that the raising of such defense . . . were not contrary to the doctrine announced in *Ruiz* v. *District Court*, 71 P.R.R. 358, and *Yakus* v. *U. S.*, 321 U. S. 414."

The judgment will be affirmed.

As in the case of *People* v. *Ortiz*, 78 P.R.R. 803, Mr. Justice Negrón Fernández dissented.