## CUMMER–GRAHAM CO. v. STRAIGHT SIDE BASKET CORPORATION.

### No. 10756.

Circuit Court of Appeals, Fifth Circuit.

May 9, 1944.

Rehearing Denied June 5, 1944.

O. B. Fisher, of Paris, Tex., and Frederick P. Cranston, of Denver, Colo., for appellant.

Gaius G. Gannon, of Houston, Tex., Elmer L. Lincoln of Texarkana, Tex., and Ned A. Stewart, of Texarkana, Ark., and H. S. Gray, of Benton Harbor, Mich., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant sued appellee for damages growing out of a breach of oral promises to maintain a uniform price fixed by appellee to be charged for all baskets made and sold by all licensees under a patent owned by appellee which covered an attachment for basket-making machines. The suit was dismissed on motion mainly on the ground that the agreements were in restraint of commerce and illegal under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 and 2, as respects interstate commerce, and as respects intrastate commerce under the Texas anti-trust statutes, Vernon's Ann. Civil Statutes, Arts. 7426, 7429, 7437.

Appellee's patent is not in the record, but the license to appellant is one to use certain patented attachments in the manufacture of straight-side broken and bent bottom baskets. The attachments are the property of the licensor. For the use of them a royalty is to be paid of 2½% of the gross sales of baskets produced and sold, or five cents per dozen baskets, at licensor's option. An agreement in the license is: "Licensee agrees not to give away any of these baskets made under this license except as samples; nor to sell any such baskets for less than the fair market price thereof, and on such terms and conditions as licensor may from time to time decide are just and equitable." Many other manufacturers of baskets were similarly licensed. Everyone treated the quoted agreement as giving the licensor the right to fix the selling price, as well as the terms and conditions of sale, and it fixed uniform prices. Some licensees,

however, sold baskets at lower prices, and appellant and others complained, since by their own observance of the prices they lost much business. The oral agreements, participated in by several licensees beside appellant, to enforce the prices against all licensees were made but not kept by appellee, and finally appellee withdrew all establishment of market prices, terms and conditions, and made no attempt to enforce compliance. Appellant thereby lost profits it would have made, and paid royalties at a higher rate than it should. Such is the case alleged.

Price fixing in commerce such as is here alleged is contrary to both Texas and federal law, in their respective fields, except as a patent or copyright monopoly granted under the Constitution of the United States may justify it. Coca Cola Co. v. State, Tex.Civ.App., 225 S.W. 791; United States v. Bausch & Lomb Optical Co. et al., 64 S.Ct. 805, decided April 10, 1944; United States v. Masonite Corporation, 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461; Interstate Circuit v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610. How far a patentee may go in price fixing is thus a federal question, to be resolved by the decisions of the federal courts. The two last cited make against an extension of the patentee's privilege beyond control of the price of the patented article. It is conceded appellee has no patent on the baskets, but only on an attachment for a basket-making machine. It licenses the right to use this attachment, not the right to make baskets. The licensees use their own materials and capital, and own absolutely the baskets they make. Appellee as patentee has no right or interest in them, and acquires none by its option to collect compensation for the use of its machine based on the sales of the baskets. The grant in a patent is of "the exclusive right to make, use, and vend the invention or discovery." 35 U.S.C.A. § 40. The invention here is the machine for making baskets. The exclusive right to make, use and vend that machine is the patentee's, and the right to vend it includes the right to fix its first selling price. If a licensee is given the right to make and vend that machine, its selling price can, for his own protection, be fixed by the patentee. United States v. General Electric Co., 272 U.S. 476, 47 S. Ct. 192, 71 L.Ed. 362; Bement & Sons v. National Harrow Co., 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058. But if he licenses merely the use of the machine, we find no sufficient authority for the contention that he may fix, to the detriment of competition in commerce, the price of the articles made by using the machine. Very many manufactured articles are produced by the use of patented machinery, though themselves not patented. This may be true of cloth, hosiery, shoes, and other things. Licensors of the patented machines have no right to interfere with free competition in the sale of the unpatented products. In the Bement case, supra, where a provision for price fixing in a license was upheld as against the anti-trust statutes, the license was for the manufacture and sale of the patented article itself, a spring-tooth harrow. If the license had been to use the patented harrow in making crops, we think the licensor would have had no right to control the price of the crops produced. We are cited also to Indiana Mfg. Co. v. J. I. Case Threshing Machine Co., 7 Cir., 154 F. 365, where licenses to make a patented straw-stacker included a price fixing agreement which was upheld. Again it will be noted that the price fixed was for the patented straw-stackers, and not for the straw-stacks that might be made by using them. United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362, is also not in point. There tungsten filament electric light bulbs were the things patented, and the selling price of them was validly fixed in the license to Westinghouse to make and sell them. A like comment applies to Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co., 7 Cir., 154 F. 358.

It is true that in Straight Side Basket Corporation v. Webster Basket Co., 2 Cir., 82 F.2d 245, the exact kind of license here in question was involved and the provision for establishment of sales prices for baskets manufactured by the licensee was said to be lawful. The authorities relied on were the Bement and General Electric Co. cases, which we have just distinguished. The decision was disapproved in Barber-Colman Co. v. National Tool Co., 6 Cir., 136 F.2d 339, in which it was held that the licensor of patented machines could not lawfully control the selling price of unpatented articles made by use of the machines. We, too, so hold.

The oral agreements on which this suit is directly based were made to protect the licensees from competition with each other, rather than for the protection of the patentee. The licensees who were willing to

648

uphold the fixed prices complained to the patentee of the price cuts by others, and threatened to cease paying royalties. The patentee was not then seeking to protect his own price fixing, and later voluntarily abandoned it, which was the final breach complained of. So the agreements are not in protection of the patent right, but were forced on the patentee and are now sought to be enforced against him. The purpose of the patent laws would not be upheld thereby, but that of the anti-trust laws would be subverted.

■ We therefore hold that the oral agreements sued on are themselves illegal restraints of commerce; and also that the provision in the licenses for price fixing, to enforce which the oral agreements were made, is likewise illegal, and appellee acted lawfully in abandoning it.

Judgment affirmed.