**Q–TIPS, INC. v. JOHNSON & JOHNSON**
(two cases).

Nos. C–10415 and C–284–49.

United States District Court
D. New Jersey.

Sept. 4, 1951.

See also D.C., 108 F.Supp. 845.

Young, Shanley, Foehl & Fisher, Newark, N. J. (Pennie, Edmonds, Morton & Barrows, by W. B. Morton, Jr., New York City, of counsel), for plaintiff.

Kenneth Perry, New York City (Stewart W. Richards and Arnold S. Worfolk, New York City, of counsel), for defendant.

FORMAN, Chief Judge.

Two suits were instituted by Q-Tips, Inc., a New York corporation, against Johnson & Johnson, a New Jersey corporation. In its first complaint (Civil Action 10415) Q-Tips alleged, among other things, that United States Letters Patent No. 1,921,604 were issued to it for apparatus for manufacturing medical swabs on August 8, 1933 [1] since which time it has been the owner of the patent and that Johnson & Johnson infringed its patent by making, selling and using swab making apparatus embodying its invention. It demanded an injunction and damages.

Johnson & Johnson's answer to the complaint denied the validity and infringement of the patent. In addition it alleged that Q-Tips, Inc. was disqualified to assert the patent against it because it had misused it by attempting to secure an unlawful monopoly in the sale of unpatented swabs produced by the apparatus, beyond the

[1]. The patent in suit is regarded as if in force at this writing although, in fact, it expired during this litigation.

scope of the monopoly contemplated by the grant of the patent.

Johnson & Johnson incorporated in its answer a counterclaim against Q-Tips alleging that it had attempted unlawfully to restrain trade and commerce and to secure for itself an unlawful monopoly of the business of selling cotton tipped swabs in the markets of the United States. It demanded that the complaint be dismissed; that Q-Tips' patent be adjudged invalid and not infringed, and that an injunction issue restraining it from prosecuting any claim for infringement of the patent or from doing other enumerated acts involving Johnson & Johnson or its privies and that it pay treble damages.

In its second suit (Civil Action 284-49) Q-Tips, Inc. brought action under the United States trade-mark laws and alleged as a first cause of action, among other things, that since prior to January 1, 1926 it had engaged in the "manufacture and sale of swabs for use as medical applicators, in baby care, for cosmetic purposes and many other uses." The swabs consisted of sanitary absorbent cotton attached to one or both ends of small sticks of wood and are packaged and sold under the trade mark "Q-Tips", for which a certificate of registration had been issued on July 9, 1934 under serial no. 309256 and that Johnson & Johnson subsequent to November of 1948 has infringed upon its trade-mark rights by using in commerce the name "Cotton-Tips" in connection with the sale of swabs for the same purposes as those of Q-Tips, Inc., and in competition therewith.

For a second count Q-Tips complained that Johnson & Johnson by its use of the name "Cotton Tips" and the appearance of its product caused confusion, upon the part of the buying public and unfairly competes with its product to its injury.

Q-Tips prayed for an injunction to restrain Johnson & Johnson from using the name "Cotton Tips"; from infringing upon its trade name "Q-Tips"; from unfairly competing with it in the use of the name, "Cotton Tips" or in any other name having the dominant word "tips" in it or in using a package having the dress and appearance of its package and from continuing its campaign of "wilful and malicious dilution of the distinctiveness and value of plaintiff's trade mark by using and inducing others to use the word 'tips' as a term generically descriptive of swabs or applicators." It also sought an accounting of profits.

Subsequent to the filing of the original complaint Q-Tips, Inc. filed an amended and supplementary complaint incorporating the first two counts as originally filed, and adding a third cause of action in which it alleged that Johnson & Johnson had formulated a plan or scheme, wilfully and maliciously, to destroy the value of the plaintiff's trade mark "Q-Tips" in furtherance of which it embarked upon a campaign to create for the word "tips" a new meaning which it had never thereto had, namely, swab or applicator. It alleged that Johnson & Johnson designed to cause the word "tips" to become accepted as the principal generic term for the article described, thus diluting the value and distinctiveness of plaintiff's trade mark "Q-Tips". It prayed for damages (compensatory and punitive) on account of the infringement and a judgment that the damages should be trebled.

Johnson & Johnson filed an answer to the amended and supplemental complaint in which it denied the validity and infringement of the trade mark "Q-Tips" or that by the use of the words "Cotton Tips" or the appearance of its packages it has unfairly competed with Q-Tips, Inc., and sought to create for the word "tips" a new meaning designed to dilute or destroy the value and distinctiveness of the trade mark of Q-Tips, Inc. It averred that its use of the words "Cotton" and "tips" individually or together in the form of "Cotton Tips" is a use other than as a trade-mark, of a term or device which is descriptive of and used fairly and in good faith only to describe to users a product manufactured and sold by it which consisted "of a small stick of which one or both tips are provided with absorbent cotton." It sets up many affirmative defenses to the amended and supplemental complaint and adds a counter-claim similar to that filed in its answer in the patent suit on the grounds that Q-Tips, Inc. has unlaw-

fully attempted to restrain trade and commerce to secure under its trade-mark an unlawful monopoly in the manufacturing and selling of the product in interstate commerce in the markets of the United States. Relief by way of injunction and damages akin to those in the patent and civil suit are demanded.

On a pretrial conference held in both cases they were consolidated for the purpose of trial and numerous exhibits were introduced by the plaintiff.

Meanwhile Johnson & Johnson has moved for a summary judgment in its favor in each suit.

### In the Patent Case (C–10415)

the defendant insists that is entitled to a summary judgment dismissing the complaint of plaintiff for infringement on the ground that no genuine issue exists as to any material fact advanced in the defenses submitted and that the summary judgment must be entered as a matter of law.

The motion is grounded on defendant's Eighth Defense, which is as follows:

"1. Defendant, on information and belief, avers that plaintiff is not in the business of manufacturing and selling machines covered by Patent No. 1,921,604, but for many years has been and now is engaged in the business of manufacturing and selling cotton-tipped swabs of the type said machine is designed to produce.

"2. The cotton-tipped swabs referred to in Paragraph 1 of this Eighth Defense are an unpatented article of commerce.

"3. Plaintiff has granted to others licenses which, since prior to the filing of the complaint herein, have been and now are in effect, to use swab making machinery embodying the alleged inventions of Patent No. 1,921,604, in which licenses plaintiff, contrary to public policy and in violation of the public interest, has limited either the use of the licensed machines to the manufacture by the licensee of unpatented swabs having a cotton tip at one end only of the stick, or the number of unpatented swabs that may be manufactured by the licensee where the licensee is permitted to manufacture swabs with cotton tips at both ends of the stick. Plaintiff thereby has attempted to secure unto itself an unlawful monopoly in the sale of such unpatented swabs beyond the scope of such monopoly contemplated by the grant of said patent. Plaintiff thus has misused said patent and is disqualified to assert it against defendant."

To support the motion the defendant submitted, subject to Rule 35 of the Federal Rules of Civil Procedure, 28 U.S.C. the pleadings and proceedings theretofore had in the cause, the exhibits in evidence, particularly the license agreements (D–36 and D–37) and admissions made by the plaintiff.

The defendant contends that thereby the following facts are demonstrated:

"1. The Bunnell patent in suit is directed to a machine for the manufacture of double tipped cotton tips of the type represented by defendant's exhibits D–4, D–9 and D–15, and of single tipped cotton tipped applicators of the type represented by defendant's exhibit D–21.

"2. The double tipped cotton tips represented by said exhibits D–4, D–9 and D–15 are an unpatented article of commerce.

"3. Except for those manufactured and sold by defendant, plaintiff has control of the production of all unpatented double tipped cotton tips manufactured and sold in the United States.

"4. Plaintiff, in order to promote and maintain a limited monopoly in the manufacture and sale of unpatented double tipped cotton tips, has granted licenses under its machine patent in which limitations have been imposed

a. In the case of one license, that to Swab Manufacturing Corporation, limiting the *number* of unpatented double tipped cotton tips that may be produced; and

b. In the case of another license, that to Splain & Lloyd, limiting the use

of the licensed machines to manufacture only single tipped cotton tipped applicators."

The defendant's contention is that the plaintiff is guilty of unclean hands by controlling the use of its patent in such fashion as to promote the unlawful monopoly in the manufacture and sale of unpatented double tipped cotton swabs, the product produced by the patented machinery. Therefore the right to relief for infringement, if infringement exists, should be denied the plaintiff pursuant to the doctrine enunciated in Morton Salt Co. v. Suppiger, 314 U.S. 488, 492–493, 62 S.Ct. 402, 86 L.Ed. 363 and Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376.

Assuming the facts to be such as have been set forth by the defendant the question boils down to the issue of whether the patentee of a machine for the manufacture of an unpatented product may, by grant of a license to manufacture and use the patented machine, restrict the number or type of unpatented products made with the patented machine.

Industry-wide licensing by the dominant patentee with price restrictions, U. S. v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; cross-licensing of conflicting patents and industry-wide licensing with price restrictions, U. S. v. Line Material Co., 333 U.S. 287, 68 S.Ct. 550, 92 L.Ed. 701, and tie-in agreements requiring use of unpatented materials, Mercoid Corp. v. Mid-Continent Inv., Co., supra; Morton Salt Co. v. Suppiger Co., supra; and Ethyl Gasoline Corp. v. U. S., 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852, have been condemned.

But these cases are all distinguishable since here there is no allegation of an attempt by the plaintiff to compel use of an unpatented material in the use of the patent involved. For the purpose of this motion, it must be taken as true that the plaintiff holds the controlling patent for the manufacture of machinery to produce the unpatented cotton tipped swabs. As a patentee, it has the right to prevent licensees from utilizing its patent in a manner that would derogate from the lawful monopoly granted to it.

During the period of time in which the patent remained valid, the plaintiff could forbid entirely any use whatsoever of its patent. The mere fact that cotton tipped swabs cannot be manufactured without infringing the plaintiff's patent is immaterial for this is the very monopoly which the patent law grants. Absent any price fixing element, as in the cases of Barber Colman Co. v. National Tool Co., 6 Cir., 136 F.2d 339, and Cummer-Graham Co. v. Straight Side Basket Corp., 5 Cir., 142 F.2d 646, the expressed intention not to permit competitors to gain a foothold in the industry of manufacturing unpatented cotton tips is insufficient to warrant the application of the equitable doctrine of unclean hands so as to deny the plaintiff the right to seek relief as herein.

The defendant argued that the case of United States v. General Electric Co., D.C., 82 F.Supp. 753, 814, was on all fours with the situation herein involved. It referred to that portion of the opinion wherein was held without merit the argument of General Electric that

"'It is clearly proper[sic] to grant licenses under machine or process patents with quantity restrictions as distinguished from price restrictions on the product, since quantity restrictions are a direct restriction of the extent of use of the licensed machine or process'."

Stripped from the context and without explanation the quoted section would appear to give comfort to the defendant. But the General Electric case involved a combination of practices which the defending company sought to justify upon the basis of purported patent control. The defendant in that case held patents which did not completely cover all stages of the manufacture of incandescent lamps and had combined a number of practices which included, among others, limitations upon the sources of material necessary to produce incandescent lamps so as to seriously inhibit their manufacture, which taken in their entirety spelled out an unlawful monopoly.

In the instant case there is involved but one patent which controls an apparatus producing an unpatented product. There is no evidence here that the plaintiff has sought to prevent the manufacture of unpatented cotton tipped swabs but the evidence indicates that the conflict arises from the use of machinery embodying the plaintiff's patent in the manufacture of such product. It has not been shown that the plaintiff has undertaken to establish a price for which the unpatented product must be sold but has conditioned the use of machinery embodying its patent by limiting the number of units produced therewith and exacting royalties therefor.

The defendant has not succeeded in demonstrating that plaintiff soiled its hands to the extent of prohibiting it from pursuing its objectives under its complaint in this suit by overstepping the monopoly to which it is entitled under its patent, into the illegal areas interdicted by the antitrust statutes. It follows that the motion of the defendant for a summary judgment of dismissal of the complaint must be denied.

In the Trade-Mark Case (C. 284-49) the defendant has also moved for summary judgment dismissing the amended and supplemental complaint on the grounds that the defenses urged in the Third, Fourth, Fifth and Eleventh Defenses set out in the answer thereto, as follows, entitle defendant to such judgment as a matter of law:

### "Third Defense

"Defendant avers that the use of the words 'cotton' and 'tips' individually or together in the form 'Cotton Tips' is a use by defendant, otherwise than as a trade-mark, of a term or device which is descriptive of and used fairly and in good faith only to describe to users a product manufactured and sold by defendant, said product being in fact cotton tips consisting of a small stick of which one or both of the tips are provided with absorbent cotton.

### "Fourth Defense

"Defendant avers that the words 'cotton' and 'tips' individually and in combination with other words and in combination with each other in the form 'cotton tips' have been used as common words for many years by manufacturers to describe to users a certain type of product consisting of a small stick having one or both of its tips provided with absorbent cotton; that such use was without objection by plaintiff; that plaintiff thereby has recognized the propriety of such use by others; and that plaintiff is estopped from asserting any exclusive right of such use in plaintiff, and any grounds for complaint by reason of such use by others, including defendant.

### "Fifth Defense

"Defendant, on information and belief, avers that the word 'Tips' which comprises a portion of the alleged trade-mark 'Q-Tips', because of plaintiff's course of conduct, including acts of omission as well as of commission, has not now and never has had any significance as an indication of origin; and that the word 'Tips' by itself and in combination with other words is and has been for some time past widely used by the trade and the purchasing public to indicate a cotton tip consisting of a small stick having one or both of its tips provided with absorbent cotton."

\* \* \* \* \* \*

### "Eleventh Defense

"Defendant avers that prior to the time of plaintiff's adoption of the alleged trade-mark 'Q-Tips', the conduct of plaintiff's predecessors and of others in the use of the word 'tip' and 'tips' has been such as to have already diluted any value or distinctiveness in said mark for use on cotton tips, and since then and long before defendant commenced to use the descriptive term 'cotton tips' to describe its product, plaintiff by acts of commission and omission has continued to dilute and destroy any alleged value and distinctiveness of said alleged mark. Such prior conduct of plaintiff's predecessors and of others and said subsequent acts of commission and omission include:

"(a) Widespread use by others of a word in the English language, viz. 'tip' or 'tips' to describe a portion of an article or as part of an alleged trade-mark for products whose functional portion is in fact a 'tip' or 'tips'.

"(b) Plaintiff's own generic use of the term 'Q-Tips' or 'Q-Tip' as nouns to indicate 'tips' or 'a cotton tip' consisting of a small stick having a cotton tip at one or both ends.

"(c) Plaintiff's use of the term 'Q-Tips' as a verb to define an act to be performed with a cotton tip such as 'If your nose is congested—Q-Tip it.'

"(d) Plaintiff's use and registration of the alleged trade-mark 'Beau-Tips' for sticks 6 inches or over in length having an absorbent cotton tip at one end only.

"(e) Plaintiff's use of. the alleged trade-mark 'Sani-Tips' for sticks 6 inches in length or over having an absorbent cotton tip at one end only.

"(f) Plaintiff's use of the word 'tip' and 'cotton tip' to describe a portion of the product on which it uses the alleged trade-mark 'Q-Tips'.

"(g) Plaintiff's acquiescence in the continued use of the term 'tips' by others to describe a small stick having a cotton tip at one or both ends.

"(h) Plaintiff's acquiescence in the use by others of the term 'Q-Tips' to describe a product consisting of a small wooden stick having an absorbent cotton tip at one or both ends.

"(i) Plaintiff's use of the word 'tip' as the descriptive term of a product in the same sense as it uses the terms soap, talc, oil, cream, as for instance, the alleged trade-marks for which plaintiff has sought registration, viz. Q-Soap, Q-Talc, Q-Oil and Q-Cream as being part of a family of Q-Tips of Q-Things, for which in turn plaintiff has also applied for trade-mark registration.

"(j) Other acts of plaintiff both of commission as well as omission."

Defendant, in an energetic and industrious exploitation of pre-trial discovery, has assembled a large volume of evidence which it asserts discloses that the plaintiff and its predecessors have used the words "tip" and "tips" descriptively; that in listing plaintiff's products in catalogues druggists have used "tips" descriptively and there have been many uses by others of the words descriptively in non-competitive products. Moreover, defendant claims that it is made clear that plaintiff has lost property in the word "tips", if it ever had any, by standing by while others in competitive fields have used the words "tip" or "tips" descriptively and only in the case of defendant's use of "Cotton-Tips" has plaintiff raised its voice that its rights have been violated.

It urges that its assemblage of such evidence demonstrates that as to its Third, Fourth, Fifth and Eleventh Defenses they are established to such degree that there is no issue as to any material fact in regard thereto and therefore under Rule 56 of the Federal Rules of Civil Procedure summary judgment upon those defenses must be awarded to it. It further declares that visual comparison of plaintiff's packages with those of the defendant conclusively negates any inference of fraud or unfair competition, so that a trial would be a superfluity for there would be no genuine issue of any material fact to adjudicate.

Resting upon these assertions it draws the following legal conclusions:

1. Assuming that plaintiff's trade-mark "Q-Tips is valid, it is not infringement as a matter of law for a manufacturer of an identical product to use the descriptive word "tips" as a part of a distinguishable mark comprising a completely dissimilar first part, as in its style of "Johnson and Johnson's Cotton-Tips".

2. Explicitly, under the language of § 33(b)(4) of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1115(b)(4) the use of a descriptive term by a defendant "otherwise than as a trade * * * mark" constitutes a complete defense even against an otherwise incontestable mark if used by the defendant "fairly and in good faith only to describe" his goods.

3. In the complete absence of any similarity between plaintiff's and defend-

ant's packages except common use of the word "Tips" and pictures of the article there can be no unfair competition.

4. That no legal cause of action existed at common law or now exists under the Federal Trade-Mark Statute for the alleged "dilution" of plaintiff's trade-mark and therefore the third cause of action in plaintiff's amended and supplemental complaint is insufficient as a matter of law.

5. Since defendant's acts lack any of the required objective elements for a finding of trade-mark infringement or unfair competition defendant's alleged motives even if found to exist are irrelevant as a matter of law and do not create a genuine issue of fact.

In resisting defendant's motion plaintiff filed two affidavits. In one, the affiant is plaintiff's advertising representative and represents himself to be an expert "in connection with the merchandising of consumer goods in the United States under trade marks and trade names, both registered and unregistered". He avers a basis for his opinion that defendant is using the words "Cotton-Tips" as a trade-mark. In the other, plaintiff's trial counsel recites evidence which he intends to produce and refers to arguments he intends to make upon a trial of the issues at suit. While not passing upon the ultimate admissibility of the matters contained therein they are sufficient to induce the belief that there should be a trial upon the issues herein.

 At this juncture the court is confronted with the question as to whether defendant on its showing has satisfied the requirements of Rule 56 of the Federal Rules of Civil Procedure for a summary judgment on its Third, Fourth, Fifth and Eleventh Defenses. Notwithstanding the volume of evidence it has brought into play it cannot be said to have demonstrated the complete lack of any genuine issue of any material fact in connection therewith. It may very well be that upon the production of no further evidence than that already adduced the defendant may prevail in this action, but that should be only after a trial upon which this testimony, and, indeed, any evidence of plaintiff may be subjected to challenge. Defendant has not placed before the court facts so pat in their implications as to warrant their acceptance axiomatically, or to the extent that counter evidence upon the part of the plaintiff may not reflect upon defendant's proofs so as to illumine them differently. For example, I do not find myself at this juncture of the proceedings so completely persuaded as to the dissimilarity of the dress of the packages upon my own visual comparison that I would rule out the possibility of influence upon my judgment of proper evidence of confusion on the part of the public should that be offered by the plaintiff. I cannot say in this case that the defendant has persuaded me more than that the fact issues involved are tight—not that there are none. Hence it falls within the pronouncements of the Court of Appeals of this Circuit in the case of Frederick Hart & Co. v. Recordograph Corporation, 169 F.2d 580.

The motion for summary judgment in this case, as in the patent case, must be denied. However, since the rendering of these decisions have been unduly delayed an application will be entertained upon the part of either party upon notice to the other for an early date for the consolidated trial of the cases.