**Manuel FIGUEROA, Defendant, Appellant,**

v.

**The PEOPLE OF PUERTO RICO, Plaintiff, Appellee.**

**No. 4985.**

United States Court of Appeals First Circuit.

April 18, 1956.

Santos P. Amadeo, Rio Piedras, P. R., with whom Rafael V. Perez-Marchand,

Rio Piedras, P. R., was on brief, for appellant.

Federico Ramirez Ros, Asst. Pros. Atty., Santurce, P. R., with whom Jose Trias Monge, Atty. Gen., and Rafael L. Ydrach Yordan, Pros. Atty., San Juan, P. R., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and BIGGS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

Manuel Figueroa was tried and convicted in the Superior Court of Puerto Rico, Bayamón Part, of the felony of buying personal property knowing the same to have been stolen, an offense denounced in § 438 of the Penal Code of Puerto Rico (1937 ed.). The judgment of conviction was affirmed by the Supreme Court of Puerto Rico, with an extensive opinion by Chief Justice Snyder which has been reproduced in 125 F.Supp. 821–830. Appeal was then taken to this court.

At the arraignment in the trial court, Figueroa entered a plea of not guilty and requested a trial by jury. When the case came on for trial the judge directed the clerk to call the jury, at which point counsel for the defendant arose and stated to the court: "After having conferred with the defendant we waive the trial by jury. The case will be tried by the court without a jury." Whereupon the trial proceeded before the judge alone, who found the defendant guilty as charged and sentenced him to a penitentiary term. The only question presented to the Supreme Court of Puerto Rico on appeal, and to this court, was whether the conviction could validly stand, based as it was upon a trial without a jury in the circumstances above related.

The Supreme Court of Puerto Rico held that the case was to be determined solely as a matter of the local law of Puerto Rico. It ruled that the right of trial by jury in felony cases, as conferred by Art. II, § 11 of the constitution of the Commonwealth of Puerto Rico, 48 U.S.C.A. § 731d note, was a right

which could be waived by the accused, and that in the case at bar this right was competently waived in open court by counsel for the accused, speaking in his behalf in the manner above set forth. It rejected appellant's contentions that Art. II, § 11 of the constitution of the Commonwealth must be considered "a Federal law" just like the old Organic Act of 1917 enacted by the Congress, 39 Stat. 951; that the right to trial by jury so conferred must be deemed to have been intended by the Congress to be equivalent to the right of trial by jury conferred by Art. III, § 2, and by the Sixth Amendment, of the Constitution of the United States; and that this right may be validly waived only by the affirmative personal act of the accused himself, and not by his counsel, in the manner prescribed in Patton v. United States, 1930, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854, and by Rule 23(a) of the Federal Rules of Criminal Procedure, 18 U.S. C.A. It may be a question whether the Patton case really held that the federal constitutional right of trial by jury can be waived only by the personal act of the accused. Cf. Adams v. United States ex rel. McCann, 1942, 317 U.S. 269, 275, 277, 63 S.Ct. 236, 87 L.Ed. 268. Like the Supreme Court of Puerto Rico we so assume, without deciding the point, for purposes of the present case. Of course, Rule 23(a) F.R.Cr.P. does not apply to the insular courts of Puerto Rico.

Though the jurisdiction of this court over the present appeal has not been challenged by the Commonwealth government, we shall refer briefly to what we understand to be our continuing jurisdiction, notwithstanding the achievement by Puerto Rico of its commonwealth status pursuant to Public Law 600 of the 81st Congress, 64 Stat. 319, 48 U.S.C.A. §§ 731b–731e.

In the preamble to Public Law 600 the Congress stated its purpose to be to provide "for the organization of a constitutional government by the people of Puerto Rico." After reciting that "the Congress of the United States by a series of enactments has progressively recognized the right of self-government of the people of Puerto Rico", it was enacted "That, fully recognizing the principle of government by consent, this Act is now adopted in the nature of a compact so that the people of Puerto Rico may organize a government pursuant to a constitution of their own adoption." 48 U. S.C.A. § 731b. It was provided that there should be a referendum in which the people of Puerto Rico could vote for acceptance or rejection of the terms of the "compact" offered in Public Law 600. Upon approval by a majority of the voters, the legislature of Puerto Rico was authorized "to call a constitutional convention to draft a constitution" for the island. 48 U.S.C.A. § 731c. As to the content of the constitution, the only requirement was that it should provide a republican form of government and should include a bill of rights. Upon the adoption of such a constitution by the people of Puerto Rico, the President was authorized to transmit it to the Congress if he found that it conformed to the applicable provisions of Public Law 600 and of the Constitution of the United States. It was further provided that upon approval by the Congress the constitution should become effective in Puerto Rico in accordance with its terms. Public Law 600 also provided that, upon the coming into effect of the new constitution of Puerto Rico, there would be an automatic repeal of a large number of sections of the preexisting Organic Act of 1917, as amended, sections relating in general to matters of purely local concern, including the structure of the insular government. The remaining sections of the Organic Act were to be continued in effect as the "Puerto Rican Federal Relations Act."

At this time there was no provision in the Organic Act of 1917, as amended, defining the jurisdiction of the Court of Appeals for the First Circuit over appeals from decisions of the Supreme Court of Puerto Rico. Section 43 of the Organic Act, which was merely a cross-reference to the jurisdictional sections of the Judicial Code of the United States,

as amended, dealing with appellate jurisdiction over the Supreme Court of Puerto Rico, had already been repealed by the Congress in 1948 when it revised, codified and enacted into law Title 28 of the United States Code, 62 Stat. 997. At the same time the Congress enacted as 28 U.S.C. § 1293 the following provision:

"The courts of appeals for the First and Ninth Circuits shall have jurisdiction of appeals from all final decisions of the supreme courts of Puerto Rico and Hawaii, respectively in all cases involving the Constitution, laws or treaties of the United States or any authority exercised thereunder, in all habeas corpus proceedings, and in all other civil cases where the value in controversy exceeds $5,000, exclusive of interest and costs."

In Romero v. People of Puerto Rico, 1 Cir., 1950, 182 F.2d 864, 867, we pointed out that under 28 U.S.C. § 1293, in civil cases coming to us on appeal from final decisions of the Supreme Court of Puerto Rico, and involving only questions of local law, including the interpretation of insular statutes, we had a technical appellate jurisdiction where the value in controversy exceeded $5,000, although in the exercise of that jurisdiction we were not permitted to reverse the Supreme Court of Puerto Rico on a point of local law unless the decision of that court in such regard was "inescapably wrong" or "patently erroneous." De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384. But we further pointed out that in criminal cases, where the appeal from the Supreme Court of Puerto Rico involved a conviction for violation of an insular criminal statute, we had appellate jurisdiction only if the case involved "the Constitution, laws or treaties of the United States or any authority exercised thereunder"—or what might be called, in short, a federal question, which federal question needed to be a substantial one, properly presented in the court below, and not merely one of a frivolous nature.

Perhaps it can be said that in view of the present commonwealth status of Puerto Rico it would be more appropriate if the judgments of the Supreme Court of Puerto Rico were reviewable only in the Supreme Court of the United States, on the same basis of jurisdiction as is presently given to the Supreme Court of the United States to review judgments of the highest court of a state. The Congress, however, has not seen fit to provide for such direct review in the Supreme Court of the United States; it may be that this is one of those loose ends left unprovided for in Public Law 600 which the Congress will tidy up in due time by further legislation. Meanwhile, since the Congress has given no evidence of an intention to withdraw our jurisdiction to review federal questions as conferred by 28 U.S.C. § 1293, we are satisfied that our jurisdiction in this respect remains unaffected. If we do not have such jurisdiction, then no court in the federal system, including the Supreme Court of the United States, could review federal questions in cases coming from the Supreme Court of Puerto Rico. Certainly there is no reason to suppose that Congress intended that consequence.

In what we now say with reference to our continuing jurisdiction in criminal cases, we do not wish to intimate any opinion as to whether we may still exercise jurisdiction in civil cases involving only questions of local law where the value in controversy exceeds $5,000. As we pointed out in De Castro v. Board of Commissioners, 1 Cir., 1943, 136 F.2d 419, affirmed 1944, 322 U.S. 451, 64 S. Ct. 1121, 88 L.Ed. 1384, this technical jurisdiction had become pretty much of a dead letter long before the coming into effect of the constitution of Puerto Rico pursuant to Public Law 600. It remains to be considered, but not in this case, whether, when the Congress passed its Joint Resolution approving the constitution of the Commonwealth, 66 Stat. 327, which constitution in § 3 of Art. V provided that the Supreme Court of Puerto Rico "shall be the court of last resort

in Puerto Rico", the Congress did not impliedly withdraw from the Court of Appeals for the First Circuit this anomalous vestige of federal jurisdiction over local law questions.

■ We proceed then to consider the merits of this appeal. Appellant has sought to present the issue as a federal question. If we should conclude that this federal question was not "substantial," our proper course would be to dismiss the appeal for lack of jurisdiction. However, the commonwealth status of Puerto Rico is a new thing; and we are bound by no controlling precedent on the issue now presented. Therefore we are unwilling to characterize appellant's federal question as frivolous, even though, as we are about to indicate, we think that it is not well taken. In that view our proper course is not to dismiss the appeal but to exercise our jurisdiction to decide the federal question, and the federal question only, and, having decided it adversely to appellant, to affirm the judgment of the Supreme Court of Puerto Rico. See Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939.

Appellant's contention will be put in clearer focus if we bear in mind the situation as it existed prior to the promulgation of the constitution of the Commonwealth.

After Puerto Rico was ceded to the United States by the Treaty of Paris, 30 Stat. 1754 (1899), the Congress took no action deemed sufficient to "incorporate" the new territory into the United States. As a result, the Constitution of the United States did not in its entirety "follow the flag" into the island. We really do not know for sure just what provisions of the Constitution of the United States became applicable *ex proprio vigore* in this unincorporated territory. In Balzac v. People of Porto Rico, 1922, 258 U.S. 298, 312, 42 S.Ct. 343, 348, 66 L.Ed. 627, we are told that the guaranties "of certain fundamental personal rights declared in the Constitution, as, for instance, that no person could be deprived of life, liberty, or property without due process of law," had from the beginning full application in Puerto Rico. On the other hand, it was settled in that case that the provisions of the Federal Constitution with reference to trial by jury in criminal and civil cases did not apply in the island.

The matter became somewhat academic with the enactment of the Organic Act of 1917, 39 Stat. 951, which in the second section thereof contained a so-called "bill of rights" embracing "substantially every one of the guaranties of the Federal Constitution, except those relating to indictment by a grand jury in the case of infamous crimes and the right of trial by jury in civil and criminal cases." 258 U.S. at page 306, 42 S.Ct. at page 346. As explained also in the Balzac case, 258 U.S. at page 310, 42 S.Ct. at page 347: "Congress has thought that a people like the Filipinos or the Porto Ricans, trained to a complete judicial system which knows no juries, living in compact and ancient communities, with definitely formed customs and political conceptions, should be permitted themselves to determine how far they wish to adopt this institution of Anglo-Saxon origin, and when."

In other words, by conscious choice of the Congress, under the regime of the Organic Acts, "the Porto Rican can not insist upon the right of trial by jury, except as his own representatives in his legislature shall confer it on him." 258 U.S. at page 309, 42 S.Ct. at page 347. By § 178 of the Code of Criminal Procedure, which went into effect July 1, 1902, the legislature had provided a statutory right of trial by jury in felony cases, on condition that the accused, by a certain specified time, should affirmatively manifest an election to be tried by a jury. As subsequently amended to include misdemeanors in some cases, this statutory provision was carried over into § 178 of the Code of Criminal Procedure (1935 ed.), reading as follows:

"Issues of fact in cases of felony and in cases of misdemeanor, when the information was originally filed in the District Court and the munic-

ipal courts also had jurisdiction of the same, shall be tried by jury if the accused or any one of them so elect and such election must be made before the court at the first reading of the docket in which the case appears. If such election be made it shall be entered on the record and if it be not made that fact shall be stated in the record, in which case it shall be considered that the right to be tried by jury has been waived and the case shall be tried by the court. However, if good reasons are shown, the court may grant a trial by jury at any time after the calling of the docket."

Thus it appears that, prior to the enactment of the constitution of the Commonwealth, the right of trial by jury, together with the method of waiving that right, existed only as a local statutory right at the sufferance of the legislature of Puerto Rico; trial by jury was not required either by the Constitution of the United States or by the provisions of the "bill of rights" in the Organic Act. Now, however, according to appellant's contention, the limited right of trial by jury found in § 11 of Art. II of the Puerto Rican constitution has become a federal question, so that this court, and ultimately of course the Supreme Court of the United States, must pronounce the final word, as a matter of federal law, as to how this right to jury trial may be waived. This despite the fact that Public Law 600, pursuant to which the people of Puerto Rico drafted and promulgated a constitution, purported to be *enlarging,* rather than *restricting,* the measure of local self-government in Puerto Rico. The inherent fallacy of appellant's contention is thus apparent; it simply can't be so.

The answer to appellant's contention is that the constitution of the Commonwealth is not just another Organic Act of the Congress. We find no reason to impute to the Congress the perpetration of such a monumental hoax. Public Law 600 offered to the people of Puerto Rico a "compact" under which, if the people accepted it, as they did, they were authorized to "organize a government pursuant to a constitution of their own adoption." 64 Stat. 319. Public Law 600 required that such local constitution contain a bill of rights, but it did not require that the bill of rights so adopted by the people of Puerto Rico must contain a guaranty of jury trial. Notwithstanding the fact that under the terms of the compact the constitution as drafted by the local constitutional convention and approved by the people of Puerto Rico had also to be approved by the Congress of the United States before going into effect, it is nevertheless true that when such constitution did go into effect pursuant to the resolution of approval by the Congress, 66 Stat. 327, it became what the Congress called it, a "constitution" under which the people of Puerto Rico organized a government of their own adoption. This constitution was drafted by the people of Puerto Rico through their duly chosen representatives in constitutional convention assembled. It stands as an expression of the will of the Puerto Rican people. We had this in mind in Mora v. Mejias, 1 Cir., 1953, 206 F.2d 377, at page 382, where we commented in passing: "It is true, the Constitution of the Commonwealth of Puerto Rico contains a due process clause, which will be authoritatively interpreted and applied by the Supreme Court of Puerto Rico as a matter of local law." This constitution is not an act of Congress, though congressional approval was necessary to launch it forth. Just as the people of Puerto Rico were not required to include a provision for jury trial in their bill of rights, so now, the people of Puerto Rico are free, through the amending process contained in Art. VII of their constitution, to take this constitutional guaranty out of the bill of rights, without leave of the Congress.

The full text of the provision of § 11 of Art. II of the Puerto Rican constitution which is now involved is as follows:

"In all prosecutions for a felony the accused shall have the right of

trial by an impartial jury composed of twelve residents of the district, who may render their verdict by a majority vote which in no case may be less than nine."

This limited constitutional guaranty of jury trial is by no means the equivalent of the guaranty in the Federal Constitution. In the first place it is limited to felony cases. In the second place it does not preserve the principle of unanimity, which was of the essence of "trial by jury" as understood and applied at the common law and as used in the Constitution of the United States. See Patton v. United States, 1930, 281 U.S. 276, 288, 50 S.Ct. 253, 74 L.Ed. 854.

██ Chief Justice Snyder pointed out that the above-quoted provision of § 11, Art. II of the Puerto Rican constitution contains no provision setting forth the procedure whereby this right to trial by jury might effectively be waived, and thus it leaves intact the old statutory provision of § 178 of the Code of Criminal Procedure (1935 ed.) above quoted. Since § 178 provides in effect that silence at the arraignment constitutes a waiver of the right to trial by jury, it would "seem absurd to say that such 'silence' must be that of the defendant rather than of his counsel." 125 F.Supp. at page 829. It follows, said the Supreme Court of Puerto Rico, that there is nothing in the constitution or statute which makes waiver by counsel insufficient and requires an affirmative waiver by the defendant personally, once the defendant has validly claimed, as here, his right to jury trial. In the absence of any constitutional or statutory provision to the contrary, the Supreme Court of Puerto Rico deemed that it should be guided, as a matter of local law, by the general principle expressed by us in Cruzado v. People of Puerto Rico, 1 Cir., 1954, 210 F.2d 789, 791: "When an accused is represented by counsel, it is generally to be assumed that counsel adapts his trial tactics to what in his judgment is for the best interests of the accused. If the accused, being present, manifests no dissent, it is usually fair to assume that he approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel."

The judgment of the Supreme Court of Puerto Rico is affirmed.