THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FLORENCIO RIVERA SUÁREZ, Defendant and Appellant.

No. CR-66-304.     Decided May 12, 1967.

486

*Edna Abruña Rodríguez, E. Armstrong Watlington,* and *Enrique Miranda Merced* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Appellant requested a trial by jury. After the evidence for the prosecution was presented and after the evidence for the defense had commenced, appellant, through his counsel, requested that the jury be withdrawn and that the prosecution be continued by the court without a jury. The judge denied the petition. That denial is assigned as an error.

Before considering this question we proceed to set forth the facts. Appellant was accused of murder in the first degree. He was convicted of homicide. On January 5, 1962, shortly after dark, a group of persons was in appellant's store, in the Ward Salto of the Municipality of Cidra. Among them there was a boy thirteen years old, the person who was killed named Félix Báez Franco, and two other individuals. The boy and Félix Báez were playing dice. At some time the owner of the store said that he did not want them to continue playing. Félix Báez insisted on his right to play. While Félix Báez was sitting on a bench, the owner

of the store took a crossbar and gave him three blows with it. The first one on the head, which threw him to the floor. One more on the head when he attempted to sit up, and a third one on the body. Félix Báez, beaten up, returned home late. In the morning he could not rise. They took him to the town of Cidra and then to the Río Piedras Hospital. He died on the following January 8. According to the testimony of the physician who performed the autopsy, the corpse of Félix Báez "did not show fracture neither at the base nor in the cranial cavity" except for the craniotomy performed by the physician who treated him at the Hospital.

From the testimony of one of the police officers who intervened in the investigation of the case it appeared that originally the case was dismissed as accidental by the Justice of the Peace of Cidra. At the request of a sister of the deceased, the investigation which gave rise to the information filed against appellant was carried out. The police officer was examined at great length in relation to the investigation he carried out. It appeared that he did not know where the defendant lived. This brought about the following comments from the judge who was presiding the hearing: "A detective who does not know whether or not the defendant lives in the store. He investigates a case and he does not know where the defendant lives. That is shameful . . . ." "Such an insignificant detail in appearance, but the thing is that he does not know yet where the defendant lives. And further, this case is full of nebulosities. My interest is to bring out the truth. I do not have the same interest as the authorities which investigate to find the culprit may have . . . ." "It is horrible that at the present time we do not know yet where the defendant lives. If that is an injustice, if he is efficient let them give him a medal." After this incident the evidence for the defense commenced. Two witnesses testified. Counsel announces that he has no more witnesses and rests his case. The defense informs that

it waives the right of a trial by jury and requests that the prosecution be continued by the court without a jury. The judge denies it.

■ The right of a trial by jury in Puerto Rico was not a constitutional right until the promulgation of our Constitution in the year 1952.[1] Section 11 of the Bill of Rights guarantees it. Before the year 1952, § 178 of the Code of Criminal Procedure—34 L.P.R.A. § 462—[2] granted said right. Positive acts on the part of the defendant were required in order that the trial be held before a jury. The defendant had to request it. *People* v. *Hernández*, 55 P.R.R. 921 (1940). This practice was consistent with our procedural tradition. During the Spanish regime the institution of the jury did not exist in our code of laws. Evidently the Legislature did not believe it was reasonable to impose a foreign institution and permitted the defendant to choose it if he so desired.

■ Our constitutional provision which guarantees the trial by jury in felony cases being already in force, we held that the defendant could waive said right and that he could do so through counsel. *People* v. *Santiago*, 78 P.R.R. 64 (1955). It is in the Rules of Criminal Procedure of 1963 that it is required that the defendant should waive expressly and personally his right to a trial by jury.

---

[1] *People* v. *Campos*, 69 P.R.R. 837, 841 (1949); *Figueroa* v. *People of Puerto Rico*, 232 F.2d 615 (1st Cir. 1956).

[2] Section 178 of the Code of Criminal Procedure provides:

"Issues of fact in cases of felony and in cases of misdemeanor, when the information was originally filed in the district court and the municipal courts also had jurisdiction of the same, shall be tried by jury if the accused or any one of them so elect and such election must be made before the court at the first reading of the docket in which the case appears. If such election be made it shall be entered on the record and if it be not made that fact shall be stated in the record, in which case it shall be considered that the right to be tried by jury has been waived and the case shall be tried by the court. However, if good reasons are shown, the court may grant a trial by jury at any time after the calling of the docket."

The right to a trial by jury is firmly established in the United States. It is an integrant part of its code of laws. Construing the provisions of Rule 23(a)[3] of the Federal Rules of Criminal Procedure, the Supreme Court of the United States held in *Singer* v. *United States*, 380 U.S. 24 (1965), after a historical incursion in the development of the institution of the jury in England and in the Colonies which later constituted the federation, that:

"In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process. A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him. The Constitution recognizes an adversary system as the proper method of determining guilt, and the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result."

See also, *United States* v. *Abrams*, 357 F.2d 539 (2d Cir. 1966); *State* v. *Taylor*, 391 S.W.2d 835 (Mo. 1965); Notes, 25 Md. L. Rev. 262 (1965); 26 U. Pitt. L. Rev. 867 (1965); Annotations 13 L.Ed.2d 1119 (1965); 51 A.L.R.2d 1346 (1957).

The practice in the federal states is varied. Some require the consent of the court in order to allow waiver of the jury. Others, the consent of the prosecuting attorney or that

---

[3] Rule 23(a) of the Federal Rules of Criminal Procedure provides that: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

of the prosecuting attorney and the court. Some states hold that it is a right of the defendant. In the note which appears in 51 Cornell L.Q. 339 (1966) these data are compiled setting forth also the corresponding statutory provisions.

The decision in *Singer* merely established that the conditions imposed by Rule 23(a) in order to allow waiver—previous consent by the court and by the prosecuting attorney—did not infringe constitutional rights. Rule 23(a) has been criticized as too restrictive and it has been suggested that it should be amended. See note in 60 Nw. U.L. Rev. 722 (1965).

The practice prevailing in this jurisdiction at the time of the trial—September 24, 1962—and the one in force now by virtue of the provisions of Rule 111 of the Rules of Criminal Procedure, do not compel the defendant to have his case tried by a jury. Unlike the tradition prevailing in the United States, we have seen that in our jurisdiction trial by jury, although at the present time a constitutional right, is not an essential ingredient in our procedure. The right of the defendant to waive it has always been recognized.

Now then, such waiver should be made by the defendant before the commencement of the trial. At that moment it is a right which the defendant has and if he chooses to exercise it, it must be upheld by the court. But the situation is different when after choosing to have a trial by jury and the same having commenced he changes his mind and decides to waive it. In that case the machinery of justice has already been moved in accordance with the request of the defendant, and the court has discretion to grant or deny it. *People* v. *Hernández*, 55 P.R.R. 921 (1940) and see also *People* v. *Plata*, 43 P.R.R. 443 (1932). In the instant case the defendant sought to waive the jury at the time he did it, evidently influenced by the aforesaid statements of the judge. They could be interpreted in the sense that the judge favored the position of the defense. The judge

probably believed that the defendant so interpreted it, and that induced by that interpretation, perhaps erroneous, he moved that the trial continue by the court without a jury. The judge acted prudently in denying the petition. Because of situations like this or other analogous ones, it should be discretionary for the judge who presides a trial to consent to continue it by the court without a jury once it has been commenced to be heard before a jury.

■ Appellant assigns that it was not established beyond a reasonable doubt that the defendant caused the death of Félix Báez Franco. His contention is grounded on the fact that the autopsy having shown that there was no skull fracture, that circumstance is incompatible with the evidence introduced by the prosecuting attorney to the effect that the deceased received three blows with a crossbar which necessarily must have produced a skull fracture. The evidence for the prosecution establishes that appellant struck two blows with a crossbar on the head of Félix Báez and the autopsy revealed that he died as a result of a severe cranio-cerebral trauma. The fact that there was no fracture of the skull is not relevant. Thus the physician testified that "A cerebrum may have very severe findings, serious lesions, yet with a history of slight trauma, and it can be the opposite, but of course, the cerebral lesions he had were serious; and further, I can assure that they are of traumatic origin."

■ One of the police officers who investigated the case upon testifying at the trial made reference to statements made by defendant when the facts were investigated. Those statements did not constitute admissions nor confessions.[4]

---

[4] The statements concern comments made by defendant when the investigation in the ward was being carried out. The policeman testified that defendant had informed him once that "he had gone to bed at eight o'clock in the evening and had not risen during all the night" and that Félix had not gone to the business that day. On another occasion he

However, appellant maintains that they could prejudice him before the jury and invokes *Escobedo* v. *Illinois*, 378 U.S. 478 (1964) and *Miranda* v. *Arizona*, 384 U.S. 436 (1966). These cases are not applicable to the present situation. Besides, the trial was held on September 24, 1962, before the decision in *Escobedo* and *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965). *People* v. *Adorno Lorenzana*, 93 P.R.R. 768 (1966).

The judgment appealed from will be affirmed.

Mr. Justice Santana Becerra states that he does not give his opinion now as to the refusal of the court to accept the waiver of the jury, said waiver having been requested at the commencement of the trial.

---

said that "I was sleeping and they called me at about eleven p.m. and I waited on them [he was referring to the two individuals who were in the store] and they went away and I went to bed and that is all I know about this case." After he was informed that he was accused of murder, the detective testified that the defendant said:

"A. . . . what I know about this case is that the night of those facts I went to bed and about midnight I heard a pig I have, that the pig was making sounds . . . .

"Q. Screeching?

"A. Yes, the pig was screeching. He arose because he believed that they were stealing it and when he went he found Pedro and Juan who were on the roadside illuminating with a flashlight which was on the floor and that he saw that and went back to sleep."