**UNITED STATES of America, Appellee,**

v.

**Manuel QUINONES,**
**Defendant, Appellant.**

**No. 84–1461.**

United States Court of Appeals,
First Circuit.

Submitted Feb. 4, 1985.
Decided April 1, 1985.

Carlos R. Noriega, Hato Rey, P.R., on brief, for defendant, appellant.

Jorge E. Vega-Pacheco, Asst. U.S. Atty., San Juan, P.R., and Daniel Lopez Romo, U.S. Atty., Hato Rey, P.R., on brief, for appellee.

Before COFFIN, Circuit Judge, WISDOM,* Senior Circuit Judge, and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Defendant-appellant Manual Quinones appeals his conviction of aiding and abetting two other persons in the possession of approximately 380 grams of cocaine with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

The sole issue is the admissibility of a recorded telephone conversation between defendant and a codefendant, Tyrone Crescioni. After being arrested, Crescioni agreed to cooperate with the government by calling defendant and having their telephone conversation recorded.

* Of the Fifth Circuit, sitting by designation.

In the district court defendant argued that the recorded conversation was inadmissible for two reasons: that it was not consensual; and that the pertinent provision of the Omnibus Crime Control Act, 18 U.S.C. §§ 2510 *et seq.*, allowing in evidence a consensually recorded telephone conversation was preempted by the Constitution of Puerto Rico prohibiting any evidence obtained by wiretapping. After the district court denied defendant's suppression motion, defendant waived jury trial, stipulated to the evidence and, subject to his right to appeal the rulings of law, submitted the case to the district court which found him guilty as charged.

On appeal, defendant raises only the issue of whether the Omnibus Crime Control Act applies to the Commonwealth of Puerto Rico. The implicated provision of the Act provides:

(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c). Section 2511(1)(b)(V) specifically makes the Act applicable to Puerto Rico.

Article II, § 10 of the Constitution of the Commonwealth specifically states: "Wiretapping is prohibited.... Evidence obtained in violation of this section shall be inadmissible in the courts."

Defendant argues that the Constitution of the Commonwealth should be considered "a federal law—an organic act" and that its prohibition against wire-tapping controls because it has the force of federal law. In order to understand defendant's argument, it is necessary to examine the historical-juridicial basis of the Puerto Rico Constitution. This has already been done in three

cases: *Figueroa v. People of Puerto Rico*, 232 F.2d 615 (1st Cir.1956); *United States v. Perez*, 465 F.Supp. 1284 (D.P.R.1979); *Hodgson v. Union de Empleados de los Supermercados Pueblos*, 371 F.Supp. 56 (D.P.R.1974). What follows is a composite derived from these three cases.

Puerto Rico was ceded to the United States by the Treaty of Paris, 30 Stat. 1754 (1899), and the island became a territory or colony governed by the United States under a system of delegated powers granted by article IV of the United States Constitution.[1] Between 1899 and 1950, Congress approved two Organic Acts to provide for the internal government of Puerto Rico.[2] In 1950, Congress enacted Public Law 600 of the 81st Congress, 64 Stat. 319, 48 U.S.C. §§ 731b–731e, whose stated purpose was to provide "for the organization of a constitutional government by the people of Puerto Rico." Congress adopted Public Law 600 "in the nature of a compact"; the people of Puerto Rico could vote for the acceptance or rejection of the terms of the compact. 48 U.S.C. § 731b. Upon approval by a majority of the voters, the Legislature of Puerto Rico was authorized to call a constitutional convention to draft a constitution for the island. 48 U.S.C. § 731c. The only requirement as to the content of the constitution was that it provide a republican form of government and include a bill of rights. *Id.* Upon adoption of a constitution by the people of Puerto Rico, the President was authorized to transmit it to Congress if he found that it conformed to the applicable provisions of Public Law 600. 48 U.S.C. § 731d. In 1952, upon approval by Congress, the Puerto Rico Constitution became effective in accordance with its terms. Concurrently, Public Law 600 provided for the automatic repeal of a large number of sections of the preexisting Organic Act of 1917, as amended; sections pertaining in general to matters of purely

---

1. Article IV, section 3 of the United States Constitution provides in pertinent part:

The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States.

2. Act of April 12, 1900, ch. 191, 31 Stat. 77, known as the Foraker Act; Act of Puerto Rico, March 2, 1917, ch. 145, 39 Stat. 951, known as the Jones Act.

**42**

local concern, including the structure of the insular government. The remaining sections of the Organic Act continued in effect as the Puerto Rican Federal Relations Act, 48 U.S.C. § 731e, which governs relations between Puerto Rico and the United States. The Puerto Rico Constitution is not a part of the Federal Relations Act.

■ Thus, in 1952, Puerto Rico ceased being a territory of the United States subject to the plenary powers of Congress as provided in the Federal Constitution. The authority exercised by the federal government emanated thereafter from the compact itself. Under the compact between the people of Puerto Rico and the United States, Congress cannot amend the Puerto Rico Constitution unilaterally, and the government of Puerto Rico is no longer a federal government agency exercising delegated power. *See Mora v. Mejias,* 206 F.2d 377, 386–88 (1st Cir.1953).

The "federal law—organic Act" theory advanced by defendant was carefully considered and rejected by this court in *Figueroa v. People of Puerto Rico,* 232 F.2d 615. Although in *Figueroa* the defendant was attempting to invoke the protection of a federal constitutional right and, here, the defendant is attempting to avoid the strictures of a federal statute, its rationale and decision fully control this case. In *Figueroa,* the defendant was charged with a felony in the Superior Court of Puerto Rico. Just prior to jury selection, counsel for the defendant waived his clients' right to a jury trial under article II, section 11 of the Puerto Rico Constitution.[3] Defendant was convicted by the court. On appeal to the Supreme Court of Puerto Rico, defendant claimed: that article II, section 11 of the Commonwealth's Constitution must be considered a federal law just like the old Organic Act of 1917 (Jones Act); that the right to a trial by jury in Puerto Rico must

be the equivalent of such right under the United States Constitution; and that under the United States Constitution such right may be validly waived only by the affirmative personal act of the defendant himself. The Supreme Court of Puerto Rico ruled that the local law of Puerto Rico was controlling and rejected the "federal law—organic Act" theory. Under Puerto Rico law, if an accused is present and does not dissent from a decision made by his counsel, then he is bound by that decision. Defendant's conviction was, therefore, affirmed by the Supreme Court of Puerto Rico.

Defendant appealed to the United States Court of Appeals for the First Circuit.[4] We affirmed the Supreme Court of Puerto Rico. During the course of his opinion, Chief Judge Magruder stated:

The answer to appellant's contention is that the constitution of the Commonwealth is not just another Organic Act of the Congress. We find no reason to impute to the Congress the perpetration of such a monumental hoax. Public Law 600 offered to the people of Puerto Rico a "compact" under which, if the people accepted it, as they did, they were authorized to "organize a government pursuant to a constitution of their own adoption." 64 Stat. 319. Public Law 600 required that such local constitution contain a bill of rights, but it did not require that the bill of rights so adopted by the people of Puerto Rico must contain a guaranty of jury trial. Notwithstanding the fact that under the terms of the compact the constitution as drafted by the local constitutional convention and approved by the people of Puerto Rico had also to be approved by the Congress of the United States before going into effect, it is nevertheless true that when such constitution did go into effect pursuant to the resolution of approval by the

**3.** Article II, section 11 of the Puerto Rico Constitution provides in pertinent part:

In all prosecutions for a felony the accused shall have the right of trial by an impartial jury composed of twelve residents of the district, who may render their verdict by a ma-

jority vote which in no case may be less than nine.

**4.** At that time, 28 U.S.C. § 1293 provided that appeals from the Supreme Court of Puerto Rico should be to the Court of Appeals for the First Circuit.

Congress, 66 Stat. 327, it became what the Congress called it, a "constitution" under which the people of Puerto Rico organized a government of their own adoption. This constitution was drafted by the people of Puerto Rico through their duly chosen representatives in constitutional convention assembled. It stands as an expression of the will of the Puerto Rican people.

*Figueroa v. People of Puerto Rico*, 232 F.2d at 620.

 Under its Commonwealth status, "Puerto Rico, like a state, is an autonomous political entity, 'sovereign over matters not ruled by the Constitution.'" *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 8, 102 S.Ct. 2194, 2199, 72 L.Ed.2d 628 (1982) (quoting *Mora v. Mejias*, 115 F.Supp. 610 (D.P.R.1953)). While the creation of the Commonwealth granted Puerto Rico authority over its own local affairs, Congress maintains similar powers over Puerto Rico as it possesses over the federal states. *See Hodgson*, 371 F.Supp. at 60–61. The congressional intent behind the approval of the Puerto Rico Constitution was that the Constitution would operate to organize a local government and its adoption would in no way alter the applicability of United States laws and federal jurisdiction in Puerto Rico. *United States v. Perez*, 465 F.Supp. at 1285, citing H.R.Rep. No. 2275, 81st Cong., 2d Sess., 2 (June 19, 1950); 1950 U.S.Code Cong.Serv. 2681–2684. When Congress approved the Constitution of Puerto Rico it was simultaneously enacted: "The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States ...." 48 U.S.C. § 734.

It is well settled that in federal prosecutions evidence admissible under federal law cannot be excluded because it would be inadmissible under state law. *United States v. Butera*, 677 F.2d 1376, 1380 (11th Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Nelligan*, 573 F.2d 251,

253 (5th Cir.1978); *United States v. Testa*, 548 F.2d 847, 856 (9th Cir.1977); *United States v. Votteller*, 544 F.2d 1355, 1361 (6th Cir.1976); *United States v. Manuszak*, 532 F.2d 311, 317 (3d Cir.1976); *United States v. Escobedo*, 430 F.2d 603, 607 (7th Cir.1970), *cert. denied*, 402 U.S. 951, 91 S.Ct. 1632, 29 L.Ed.2d 122 (1971); *United States v. McGuire*, 381 F.2d 306, 315 (2d Cir.1967), *cert. denied*, 389 U.S. 1053, 88 S.Ct. 801, 19 L.Ed.2d 848 (1968).

The Omnibus Crime Control Act is the controlling law for federal prosecutions in Puerto Rico. The evidence of the recorded telephone conversation was properly admitted.

*Affirmed.*