[No. B061468. Second Dist., Div. Seven. May 13, 1992.]

WANDA IRIS LOPEZ, Plaintiff and Appellant, v.
MEDICAL BOARD OF CALIFORNIA,
Defendant and Respondent.

COUNSEL

Ronald S. Marks for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Alvin Korobkin, Assistant Attorney General, and Jana L. Tuton, Deputy Attorney General, for Defendant and Respondent.

OPINION

**WOODS (Fred), J.**—Appellant's application for licensure as a physician and surgeon was rejected by the Board of Medical Quality Assurance[1] (Board or respondent) and her petition to the Los Angeles County Superior Court for a writ of mandate was denied. We find substantial evidence supports respondent's action and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 1981 appellant graduated from San Juan Bautista School of Medicine (Bautista) in Puerto Rico. From 1981 through 1983 she completed clinical residency studies in accredited New York hospitals. From 1984 to 1986 she "did [her] fellowship in internal medicine in Massachusetts." Appellant received licenses to practice medicine in Puerto Rico, Vermont,

---

[1]Since 1989, the "Medical Board of California" (Bus. & Prof. Code, § 2001).

Massachusetts, and New York. In March 1988 she was employed by the United States Navy as a medical doctor and worked at a federal facility in Long Beach, California.

In October 1987 appellant applied to the Board for a physician's and surgeon's certificate. The Board rejected her application because Bautista was not an accredited medical school. Appellant requested a hearing. A statement of issues was filed by respondent, both parties submitted points and authorities, and on March 28, 1990, an administrative hearing was held. Appellant, represented by counsel, testified and called witnesses.

On May 17, 1990, the administrative hearing judge filed a proposed decision denying appellant's licensure application. The Board, thereafter, adopted that decision. On August 21, 1990, appellant filed a petition for a writ of mandate which the superior court denied on April 16, 1991. This appeal followed.

DISCUSSION

*Licensure procedure.*

California has a two-track physician's and surgeon's licensure procedure: one for graduates of medical schools in the United States or Canada (Bus. & Prof. Code,[2] §§ 2080-2099.5) and another for graduates of foreign medical schools (§§ 2100-2120).

Essential to the first track, graduation from a United States or Canadian medical school, is graduation from an *approved* medical school. Section 2082 provides: "Each application shall include the following: (a) A diploma issued by an approved medical school." Section 2089 provides: "(a) Each applicant for a physician's and surgeon's certificate shall show . . . that he or she has successfully completed a medical curriculum . . . in a medical school . . . approved by the division [of licensing] . . . ."

Approval authority is reposed in the Division of Licensing (§ 2084), one of the Board's three divisions (§ 2003). It exercises its approval authority by relying upon a national accrediting agency. Section 2084 provides: "Medical schools accredited by a national accrediting agency approved by the division and recognized by the United States Department of Education shall be deemed approved by the division . . . ." The national accrediting agency approved by the Division of Licensing is the Liaison Committee on Medical

---

[2]Unless otherwise noted, all statutory references are to the Business and Professions Code.

Education (L.C.M.E.) (Cal.Code Regs., tit. 16, § 1314[3]). A licensure applicant who has graduated from an *approved* medical school "shall be deemed to meet the requirements of section 2089." (§ 2084.)

*Appellant contends "the lack of L.C.M.E. accreditation of San Juan Bautista School of Medicine did not authorize the Board to reject appellant's application for licensure."*

At the administrative hearing it was stipulated that "The San Juan Bautista School of Medicine, Bayamon, Puerto Rico, is not now, nor has it ever been, accredited by the [L.C.M.E.]."

▮ Notwithstanding this stipulation, appellant urges two reasons her application should have been accepted. The first is an argument based upon the interpretation of section 2084: "The Division of Licensing may approve every school which substantially complies with the requirements of this chapter for resident courses of professional instruction. Graduates of medical schools approved under this section shall be deemed to meet the requirements of Section 2089. Medical schools accredited by a national accrediting agency approved by the division and recognized by the United States Department of Education shall be deemed approved by the division under this section. Nothing in this chapter prohibits the division from considering the quality of the resident courses of professional instruction required for certification as a physician and surgeon."

Appellant argues that "the plain meaning of . . . [s]ection 2084 is that the Division of Licensing must exercise its discretion and judgment as to whether a school substantially complies with the requirements of the chapter for resident courses of professional instruction *unless* the school is accredited by a national accrediting agency in which case it is *deemed* approved." (Original italics.)

For several reasons, we disagree.

Appellant's interpretation of section 2084 would convert the permissive word "may" into a mandatory "shall." Such an interpretation is particularly

---

[3]It provides: "(a)   Those medical schools accredited by the Liaison Committee on Medical Education of the Coordinating Council on Medical Education or the Council on Medical Education of the Canadian Medical Association shall be deemed to be approved by the division for the giving of resident professional instruction in medicine.

"(b)   A current list of such medical schools shall be maintained on file in the Sacramento office of the division.

"(c)   Nothing in this section shall be construed to prohibit the division from disapproving a medical school which does not comply with Section 2089 of the code."

unjustified considering the evolution of section 2084. Prior to the 1980 passage of the Medical Practice Act (§ 2000), its antecedent section 2173 provided: "The board *shall* approve every school which complies with the requirements of this chapter for resident courses of professional instruction and *shall* admit every applicant to the examination who complies with the requirements provided for the particular certificate for which his application is filed. Nothing in this chapter prohibits the board from considering the quality of the resident courses of professional instruction required." (*Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 136 [40 Cal.Rptr. 171], italics added.)

We conclude that section 2084 means the Division of Licensing *may*, but need not, approve a substantially complying school.

An additional reason for rejecting appellant's interpretation of section 2084 is based upon practicalities. ▮ The accreditation process "protect[s] the public of this state from harm suffered at the hands of poorly trained or incompetent medical practitioners. That interest is undoubtedly a very significant one." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10].) ▮ But the accreditation process, as appellant's witness, Mr. Grimm, testified, is "a tremendously complex process." A medical school seeking accreditation needs a year or two just to compile documentation. "To get it reviewed [by L.C.M.E.] can take another year to year-and-a-half." The review evaluates the school's physical plant, faculty, quality of the student body, library, research facilities and equipment, etc. At least two site visits are involved. Before the first site visit, L.C.M.E. may require additional documentation. After the first site visit "they compare the results of the site visit with the paperwork. . . . They go back to Washington and have a meeting. . . ." The result may be to "send [the medical school] back to the drawing board, again, to put together more materials, to add faculty, to make a new building, whatever is required."

In contrast to this multiyear, two-site visit, "tremendously complex process" conducted by a national accrediting agency (L.C.M.E.) is a Division of Licensing administrative hearing. The instant one took less than a day and involved two witnesses, appellant and one other. It is impractical at such a hearing—applicant by applicant, often almost a decade after the fact—to determine if some distant, unseen school, 10 years ago "substantially complie[d]" with the many requirements of section 2089.

For this additional reason, section 2084 permits, *but does not require*, the Division of Licensing *itself* to approve a medical school claiming to substantially comply with the requirements for resident courses of professional instruction. (§ 2084.)

Appellant's second argument is that Bautista should not be considered a United States medical school, for which approval is required, but a foreign medical school, for which approval is not required.

Certainly, Bautista is not located in one of the 50 states of the United States. But neither is it located in a "foreign country." It is located in Puerto Rico, first "ceded to the United States by the Treaty of Paris, 30 Stat. 1754 (1899), and the island became a territory or colony governed by the United States under a system of delegated powers." (*United States* v. *Quinones* (1st Cir. 1985) 758 F.2d 40, 41.) In 1952 Puerto Rico became a commonwealth. "Under its Commonwealth status, Puerto Rico, like a state, is an autonomous political entity, sovereign over matters not ruled by the Constitution. [citation.] While the creation of the Commonwealth granted Puerto Rico authority over its own local affairs, Congress maintains similar powers over Puerto Rico as it possesses over the federal states." (*Id.* at p. 43.) (Internal quotation marks omitted.)

As respondent notes: "A review of the legislative history of section 2084, 2089, and 2095.5, and in particular the amendments made in 1985 . . . reveals that the issue of whether the Commonwealth of Puerto Rico ought to be considered a state or a foreign territory for licensing purposes was not considered."

For purposes of sections 2082, 2084, and 2089, the Board classifies a Puerto Rican medical school as a United States, not foreign, medical school. We believe this classification is reasonable and does not exceed the Board's authority. L.C.M.E., which accredits only United States, not foreign, medical schools, has accredited at least two medical schools in Puerto Rico and citizens of Puerto Rico are United States citizens.

We are not persuaded that Board inconsistency towards Puerto Rican medical schools in the early 1980's, as testified to by Mr. Grimm, precludes present Board classification. In 1984, as Mr. Grimm testified, a massive report documented educational fraud and recommended administrative improvements. Thereafter the Board sought a legal opinion concerning the classification of Puerto Rican medical schools. Legal counsel for the Department of Consumer Affairs issued such an opinion and the Board has followed it.

We conclude that appellant's contention is not well taken.

*Appellant contends the evidence submitted on behalf of appellant established that her curriculum and clinical instruction met the requirements of the code.*

The administrative law judge found, and the Board adopted that finding, that appellant "failed to establish that the medical education curriculum she

received at SJ Bautista complies with the standards set forth in . . . Section 2089 and 2089.5."

Appellant contests that finding. In light of our earlier holding, we need not address this contention.

*Appellant contends a graduate of a nonaccredited medical school in Puerto Rico should have the same licensure opportunity as a graduate of a nonaccredited foreign medical school.*

Appellant's contention is more appropriately addressed to the Legislature. It has enacted a two-track licensure procedure, one for graduates of United States medical schools, another for graduates of foreign medical schools. Appellant has not been denied equal protection by being treated like all other United States citizen-graduates of a United States medical school.

### DISPOSITION

The order denying a petition for writ of mandate is affirmed. Costs on appeal are awarded to respondent.

Lillie, P. J., and Johnson, J., concurred.