Brassard, J.
Defendant moves to dismiss indictments for assault with intent to commit rape and aggravated rape on the ground that the Commonwealth’s failure to preserve exculpatory evidence prejudices the defendant. A hearing was conducted by the Court on September 24, 1996.
It is alleged that Donnie Blakey (“Blakey”) committed aggravated rape at an apartment in Everett, Massachusetts on October 24, 1995. It is further alleged that during the course of the rape, the defendant ejaculated in part on the stretch pants or leggings of the victim. Within several hours after the alleged rape, the victim went to the Cambridge Hospital and a rape kit was taken. The kit included swabbings from the clothing of the victim. Shortly thereafter, the victim picked out a photograph of Blakey as the man who had assaulted and raped her. The Cambridge Hospital notified the Everett police that the rape kit was ready to be picked up, and the police picked up the rape kit and returned it to the Everett police station where it was placed in a secure, locked refrigerator. Before the rape kit could be analyzed, the refrigerator malfunctioned and shut down. The freezer section of the refrigerator defrosted on top of the rape kit, and when Officer Collier opened the refrigerator to get the kit, she saw that it was filled with water. In a lab report dated June 10, 1996, the State Police chemist Elizabeth Fisher (“Fisher”) reported that the screening tests for seminal fluid residue were negative on the leggings. The parties stipulated that Fisher would testify, consistent with her lab report, that as a result of the rape kit being contaminated by water, she could not opine whether or not sperm cells had ever been present on the contaminated items she tested.
The defendant contends that because the complaining witness told both the police and the grand jury that the defendant had ejaculated on the leggings, a negative test for sperm on that item of clothing would be an important basis upon which to impeach the credibility of the complaining witness. As there were no other witnesses to the alleged rape and assault, the defendant urges that the credibility of the complaining issue is central.
When considering a motion to dismiss because of the government’s loss of potentially exculpatory evidence, “the judge must consider and balance the degree of culpability of the government, the materiality of the evidence, and the potential prejudice to the defendant ...” Commonwealth v. Henderson, 411 Mass. 309, 310 (1991), citing Commonwealth v. Olszweski, 401 Mass. 749, 754-55 (1988).
Evidence is potentially exculpatory if there is a reasonable possibility, based on concrete evidence, that access to the material would have produced evidence favorable to the defendant. Commonwealth v. Willie, 400 Mass. 427, 433 (1987). In the present case, I find that the rape kit was potentially exculpatory.
As to the culpability of the government, I find that there is no fault on the part of the government in this case. The actions of the government certainly do not fall to the level of bad faith, gross negligence, or even negligence. Indeed, even “inadvertence” is inappropriate as that term suggests a mistake of some kind. Here, what happened was simply an accident. Compare Commonwealth v. Cameron, 25 Mass.App.Ct. 538, 548 (1988) (recognizing the possibility of loss of evidence “through no one’s fault” because of malfunctioning video camera).
As to materiality, I conclude that the lost evidence would have been material, particularly given the testimony of the complaining witness to the effect that some of the semen spilled on her leggings.
As to prejudice, I find that the loss of the potentially exculpatory evidence is prejudicial. In this sexual assault case, there are only two witnesses, the complaining witness and the defendant, and the credibility of the complaining witness is clearly an important issue.
The Supreme Judicial Court has held that the trial judge must exercise discretion in determining the manner in which to protect the rights of the defendant when the government loses or destroys potentially exculpatory evidence. Weighing all of the factors, and in particular recognizing the lack of any fault on the part of the government, I conclude that the remedy of dismissal is too harsh. “(T]he public has a substantial interest in prosecuting those accused of crimes and bringing the guilty to justice.” Commonwealth v. Perito, 417 Mass. 674, 681 (1994) (citation omitted). I find that the trial in this case will not be fundamentally unfair because a refrigerator malfunctioned. Although this is a close case, trials do not take place in a vacuum and accordingly are seldom perfect. Imperfections may surface for any of a number of reasons such as the death of a witness who was expected to provide exculpatory evidence. Due process does not, however, demand perfection. Colon-Rosich v. People of Puerto *87 Rico, 256 F.2d 393 (1958). I find that the more appropriate remedy is to permit the defendant to question about and comment upon the loss of the rape kit, or, to permit the defendant to choose the alternative of no evidence being offered as to the rape kit and the spilling of some semen on the legging of the complaining witness. I recognize that neither of these choices is ideal, but I conclude that due process does not require dismissal of the charges.